JOSE ANTHONY BORJA
CDCR # T-54311
P.O. BOX 5104
Delano, Ca 93216
        Petitioner / Appellant

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 0 5 2013

FILED _____  _____
DOCKETED _____  _____
                    DATE        INITIAL

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE ANTHONY BORJA<br>Petitioner / Appellant<br><br>Vs<br><br>Matthew Cate: CDCR Secretary<br>M.D. Biter: Warden KVSP<br>        Respondent | Case No. 12-56187<br>D-C No. 2:09-02420 DDP<br>Central District California<br><br>PETITION FOR "REHEARING"<br>— WITH A REQUEST<br>FOR "EN-BANC" HEARING<br>AND CONSIDERATION |

"PETITION FOR EN-BANC REHEARING"

( i )

# TABLE OF CONTENTS

|  | Page |
|---|---|
| PETITION FOR REHEARING (EN-BANC) | 1 — 20 |
| VERIFICATION AND PROOF OF SERVICE | 20 |
| Statement OF THE CASE | 2 — 3 |
| STANDARD OF REVIEW | 3 — 4 |
| LEGAL STANDARD FOR ISSUEANCE OF "C.O.A" | 4 — 6 |
| MERITS OF THE CLAIM'S |  |
| DENIAL OF JURY TRIAL & DUE PROCESS | 7 — 10 |
| IMPROPER USE OF GANT OFFENSE DENIED PETITIONER A FAIR TRIAL — DUE PROCESS OF LAW AND DID RENDER HIS JURY TRIAL "FUNDEMENTALLY UNFAIR" — — — — — — | 11 — 13 |
| CUMMULATIVE AFFECT OF ERROR'S | 13 — 14 |
| REMAND FOR EVIDENTIARY HEARING IS NECESSARY — — — — — | 14 — 17 |
| IMPORTANT QUESTION'S OF EXCEPTIONAL IMPORTANCE — — — — | 17 — 18 |
| CONCLUSION | 18 — 19 |
| PRAYER FOR RELIEF | 19 |

## "INDEX OF EXHIBITS"

| APPENDIX ONE -- | PANEL DECISION ORDER DENYING C.O.A |
| APPENDIX TWO | PETITION TO 9TH CIRCUIT FOR C.O.A |
| APPENDIX THREE | MAGISTRATES REPORT AND RECOMENDATION'S |

( ii )

JOSE ANTHONY BORJA
CDCR # T-54311
P. O. Box 5401
DELANO, CA. 93216
Petitioner / Appellant

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JOSE ANTHONY BORJA
  Petitioner / Appellant

Vs

Matthew Cate: CDCR~
Secretary ~And M.D. Biter~
Warden ~ KVSP
  Respondent

CASE NO. 12-56187

D.C. NO. 2-09-02420 DDP
Central District California

PETITION FOR REHEARING
--- WITH A, REQUEST FOR
"EN-BANC" HEARING And
CONSIDERATIONS

TO:     THE HONORABLE JUSTICES OF THE UNITED
        STATES COURT OF APPEAL, FOR THE
        NINTH CIRCUIT:

COMES THE PETITIONER / APPELLANT "JOSE ANTHONY BORJA"
ACTING AS HIS OWN COUNSEL ~ IN PRO-SE !!
RESPECTFULLY PETITIONS ~ THE ABOVE ENTITLED
"FULL" COURT FOR  A REHEARING ----
WITH A SUGGESTION FOR "EN-BANC" HEARING
AND CONSIDERATION !!

--- MADE ON THE GROUNDS THAT PANEL DECISION IS IN
CONFLICT WITH EXISTING OPINIONS FROM BOTH THE U.S.
SUPREME COURT AND NINTH CIRCUIT ~ AND INVOLVE ONE OR
MORE QUESTIONS OF EXCEPTIONAL IMPORTANCE
FED. R. APP. P. 35(A) AND (B)(1) AND 9TH CIR.R. 35-1

(1)

## "Statement of the Case"

1  PETITIONER FILED HIS FEDERAL HABEAS
2  CORPUS IN THE CENTRAL DISTRICT COURT IN LOS ANGELES
3  CASE NO. 2:09-CV-02420-DDP-S: PRESENTING
4  THE ISSUE'S OF:

5  (1) THAT HE WAS DENIED HIS SIXTH AMENDMENT
6  RIGHT TO A JURY TRIAL, AND DUE PROCESS
7  AS A RESULT OF THE LAW ENFORCEMENT "GANG
8  EXPERTS" TESTOMONY ON ULTIMATE ISSUE OF
   FACT AS TO PETITIONER'S "GUILT" BY RENDERING
9  HIS OPINION THAT DEFENDANT COMMITTED THE
10  ISTANT OFFENSES FOR THE PURPOSE OF AND THE
    BENIFIT OF THE CRIMINAL STREET GANG!!
11

12  (2) THAT DUE PROCESS AND FAIR TRIAL REQUIREMENTS
13  WERE VIOLATED --- THERE WAS NOT SUFFICIENT
14  EVIDENCE TO ESTABLISH THAT PETITIONER'S CONDUCT
15  MET THE GANG ENHANCEMENT STATUTE'S ELEMENTS
16  --- NOR THAT PETITIONER HAD THE REQUISITE ---
17  "SPECIFIC INTENT" TO SUSTAIN A GANG ENHANCEMENT
18  FINDING --- AND THE GANG OFFENSE WAS AN IN-
19  -APROPRIATE CHARGE, AND WAS FALSELY AND
    WRONGFULLY USED TO PREJUDICE AND CONTAMINATE
20  THE JURRORS --- RENDERING THE TRIAL "FUNDEMENTALLY
21  UN-FAIR" [SEE L.O.A. PG 4-15: APPENDIX TWO]
22

23  (3) THERE WAS INSUFFICIENT EVIDENCE, THAT PETITIONER
24  WAS AWARE OF THE BAUTISTA'S WHEN THE VICTIM
    CARLOS ANDRADE WAS SHOT!!
25

26  THE DISTRICT COURT DENIED ALL THREE OF THESE
27  CLAIMS ON THEIR MERITS --- AND LIKEWISE ALSO
28  DENIED A REQUEST TO ISSUE A CERTIFICATE OF
    APPEALABILITY

(2)

---- Petitioner then files a timely Notice of Appeal, and also filed an IN-DEPTH Petition to the Ninth Circuit, for the Issuance of the Certificate of Appealability [See attached APPENDIX TWO Pg 1-15 Inclusive]

On 6-19-13 the Ninth Circuit Panel Judges --- issued an order Denying the Request for the C.O.A. without stating Any Reasons, for the Denial ?!! [See Attached Order as APPENDIX ONE]

Petitioner maintains and asserts THAT HIS "IN-DEPTH Petition to the Ninth Circuit for the Certificate of Appealability" [APPENDIX TWO Herein] Demonstrated Beyond the Point of over-kill THAT HIS Constitutional Rights HAD Been Violated Below --- and that He is entitled to Proceed And to Be Afforded the opportunity to Have the Federal Court of Appeals ADJUDICATE the merits of HIS CLAIM'S

---

[ " STANDARD of Review " ]

A Petition for Rehearing must state with particularity Each Point of Law or Fact the Party Believes the Court Has Overlooked or mis-interpreted, And must succinctly Argue why the Court Has Erred !!

Rehearing And EN-BANC Determinations can be ORDER'D, if It appears THAT THE Panel Decision Is in Conflict with Existing Opinions from the Ninth Circuit or the United States Supreme Court --- And That Rehearing is necessary to secure & maintain uniformity of the Courts Decision's -- or when the Proceeding's or Issue's involve ---

( 3 )

--- ONE OR MORE QUESTIONS OF EXCEPTIONAL
IMPORTANCE --- ALL OF THESE ARE APPROPRIATE
GROUNDS FOR "REHEARING EN-BANC" SEE
FED R. APP. P. 35(A) AND (B)(1) AND
9TH CIR. R. 35-1

  THE METHOD OF RESOLVING DECISIONAL
CONFLICT --- WHEN FACED WITH IRRECONCILABLE
CONFLICT IN CONTROLLING AUTHORITY --- THREE
JUDGE PANEL "MUST" CALL FOR EN-BANC
DECISION, SEE U.S. V HARDESTY (9TH CIR 1992)
977 F 2D. 1347;

  PETITIONER MAINTAINS THAT HIS CASE FALLS
FALLS WITHIN THE AMBIT OF THE CRITERIA FOR
BOTH "REHEARING" AND "EN-BANC" HEARING
OR DETERMINATION --- AND RESPECTFULLY MOVES
AND REQUESTS ALL 50 JUSTICES OF THE FULL
COURT TO BE PRESENTED WITH THIS PETITION --
AND THAT ALL RENDER A VOTE !!!

  " LEGAL STANDARD FOR ISSUANCE OF C.O.A "

  THE U.S. SUPREME COURT DECISION IN ---
MILLER-EL V COCKRELL (2003) 537 U.S 322
123 S. Ct 1029: THE COURT CLARIFIED THE
STANDARDS FOR ISSUANCE OF CERTIFICAT OF APPEALABILITY

--- " A PRISONER SEEKING C.O.A NEED ONLY TO
DEMONSTRATE A SUBSTANTIAL SHOWING OR DENIAL
OF A CONSTITUTIONAL RIGHT --- A PETITIONER SATIFIES
THIS STANDARD BY DEMONSTRATEING THAT JURISTS
OF REASON COULD DISAGREE WITH THE DISTRICT
COURTS RESOLUTION OF THE CONSTITUTIONAL CLAIM'S

(4)

---- OR THAT JURISTS OF REASON COULD CONCLUDE THE ISSUES PRESENTED ARE ADEQUATE TO DESERVE ENCOURAGEMENT TO PROCEED FURTHER -----

ID. AT 123 S. CT AT 1034 --- CITING (SLACK V MCDONALD (2000) 529 U.S 473, -- 120 S. CT 1595 ----- REDUCED TO ITS ESSENTIALS --- "THE TEST IS MET WHERE PETITIONER MAKES A SHOWING THAT, THE PETITION, SHOULD HAVE BEEN RESOLVED IN A DIFFERENT MANNER --- OR THAT THE ISSUES PRESENTED WERE ADEQUATE TO DESERVE ENCOURAGEMENT TO PRO- -CEED FURTHER  ID. ● MILLER-EL V COCKRELL AT P9 1039) CITING (BAREFOOT V STELLE) (1983) 463 U.S. 880 ---- "THIS MEANS THAT THE PETITIONER DOES NOT HAVE TO PROVE THAT THE DISTRICT COURT WAS NECESSARILY WRONG ---, JUST THAT ITS RESOLUTION OF THE CONSTITUTIONAL CLAIM IS DEBATABLE

--- "WE DO NOT REQUIRE PETITIONER TO PROVE, BEFORE THE ISSUANCE OF C.O.A." THAT SOME JURISTS WOULD GRANT THE PETITION FOR HABEAS CORPUS --- INDEED A CLAIM CAN BE DEBATABLE EVEN THOUGH EVERY JURIST OF REASON MIGHT. THAT AFTER C.O.A. HAS BEEN GRANTED AND THE CASE HAS RECIEVED FULL CONSIDERATION --- THAT PETITIONER WILL NOT, PREVAIL --- AS WE HAVE STATED IN "SLACK" --- WHERE THE DISTRICT COURT HAS REJECTED THE CONSTITUTIONAL CLAIMS ON THE MERITS ---- THE SHOWING REQUIRED TO SATISFY § 2253(C) IS STRAIT FORWARD, THE PETITIONER MUST DEMONSTRATE THAT REASONABLE JURISTS WOULD FIND THE DISTRICT COURTS ASS- -ESSMENT OF THE CONSTITUTIONAL CLAIM DEBATABLE OR WRONG !! --- "APPLYING THE ABOVE STAN- -DARD FOR GRANTING "C.O.A" THIS COURT HAS ACKNOWLEGED THAT THE STANDARD IS RELATIVELY LOW) (JENNINGS V WOODFORD) (9TH CIR 2002) 290 F. 3D 1006 AT 1010, (--CITING "SLACK" AT 483) ----

(5)

--- MOREOVER. BECAUSE THE C.O.A. RULEING IS NOT AN ADJUDICATION OF THE MERITS OF THE APPEAL --- IT DOES NOT REQUIRE A SHOWING THAT THE APPEAL WILL SUCEED [MILLER-EL V COCKRELL] SUPRA 537 U.S at 337 ---

--- FINALLY "DOUBTS" ABOUT THE PROPRIETY OF A CERTIFICATE OF APPEALABILITY "MUST" BE RESOLVED IN PETITIONER'S FAVOR (SEE LAMBRIGHT V STEWART [(9TH CIR 2000) 220 F. 3D. 1020 at 1025 ("EN-BANG")

--- PETITIONER HEREIN POINTS OUT THAT HE NOT ONLY SATISFIED THE LEGAL STANDARD'S FOR THE ISSUEANCE OF THE "CERTIFICATE OF APPEALABILITY" EG:) THAT HIS CONSTITUTIONAL RIGHTS WERE VIOLATED - PERHAPS BEYOND THE POINT OF OVER-KILL [SEE APPENDIX TWO] --- BUT MOREOVER PETITIONER HAD ALSO DEMONSTRATED THAT HIS CLAIM'S DO IN FACT and LAW HAVE MERIT AND THAT HE SHOULD BE GRANTED THE RELIEF SOUGHT !!!

--- FURTHERMORE IT SHOULD BE ABUNDANTLY CLEAR THAT THE DISTRICT COURTS RULEING AND THE PANEL JUSTICES DECISION --- BOTH ARE DIAMETRICALLY OPPOSED TOO AND IN DIRECT CONFLICT WITH THE ABOVE CONTROLLING AUTHORITY AND PRECEDENCE FROM THE UNITED STATES SUPREME COURT AND THE U.S. COURTS OF APPEAL'S ON THE SAME EXACT ISSUE'S AND FACTS !!

(6)

MERITS OF THE CONSTITUTIONAL CLAIMS

DENIAL OF JURY TRIAL
AND DUE PROCESS

THIS CONSTITUTIONAL VIOLATION IS STRAIT FORWARD AND LITERALLY "CUT AND DRY" ---- IT IS a UNIVERSALLY ACCEPTED LEGAL PRINCIPAL THAT AN EXPERT WITNESS CANNOT TESTIFY OR GIVE THEIR OPINION ON GUILT OR INNOCENCE OF THE DEFENDANT -- OR AS TO ANY ULTIMATE ISSUES OF FACT IN DISPUTE ----

---- HERE IN THIS INSTANT CASE, THE PROSECUTION'S GANG EXPERT - OFFICER "SKATIL" GAVE DIRECT TESTIMONY THAT HIS OPINION WAS THAT PETITIONER WAS GUILTY ---- FOR EXAMPLE! THE GANG EXPERT "SKATIL" TESTIFIED THAT PETITIONER "ROBTA" HAD COMMITTED THE UNDERLYING OFFENSES FOR THE BENIFIT OF THE CRIMINAL STREET GANG (SEE [3 Rt. at pg 223~224 AND 229~233] AND [3 RT. 291~312~313] SEE ALSO PETITIONER'S FEDERAL HABEAS CORPUS POINTS AND AUTHORITIES PG 8~11 ON FILE WITH THIS COURT")

WHATSMORE IS THAT THE NINTH CIRCUIT HAS ALREADY RULED ON AND CLARIFIED THIS ISSUE (SEE [BRICENO V SCRIBNER] (9TH CIR 2009) 555 F. 3D 1089, (FOOT NOTE #1) ---- STATEING THAT IF AN EXPERT EXPRESSED HIS JUDGEMENT THAT THE CRIMES WERE COMMITTED FOR THE BENIFIT OF THE GANG, THAT THIS WOULD BE "IMPROPER" AND AMOUNT TO AN EXPERT OPINION THAT DEFENDANT WAS GUILTY ("EMPHASIS ADDED") CITING (MOSES V PAYNE) 543 F 3D 1090 AT 1106 AND U.S. V LOCKETT) 919 F. 2D 585 AT 590

THE GANG EXPERT "SKATIL" ALSO TESTIFIED THAT IN HIS OPINION THE PRESENT SHOOTING WAS COMMITTED TO PROMOTE, ASSIST OR FURTHER THE "HUPLEX" STREET GANG [3 RT 233~234] AND [2 RT 62] AND [3 RT. 291~312~313]

--- FURTHERMORE, as the court stated in case of [BRICENO V SCRIBNER] supra 555 F 3D at 1082

1  -- AN EXPERTS witness testomony IS Limited TO
2  matters about GANG culture and HABITS But
   such testomony IS INSUFFICIENT to establish
3  that a specific individual possessed a "SPECIFIC
4  intent" that IS mandatory PREREQUISITE to sustaining
5  A finding on GANG offense's -- -- see also
6  [GARCIA V CAREY] (9TH cir 2005) 395 F 3D 1099
7  at 1101-1103-and N. #5; ---
8  ---  A GANG EXPERTS SELF SERVING, SUBJECTIVE
   SPECULATION and OPINION'S --- DID NOTHING MORE
9  than "IMPROPERLY" INFORM THE JURY HOW
10 THE EXPERT BELIEVED THE CASE SHOULD BE DECIDED
11 -- without any UNDERLYING factual BASIS TO SUPPORT
12 IT [BRICENO V SCRIBNER] supra 555 F 3D at 1082
13 [see APPENDIX TWO, P9. 6 and 12-13]
14 --- to allow such evidence deprived A defendant of
15 DUE PROCESS OF LAW and HIS RIGHT TO a JURY TRIAL
   under THE SIXTH and FOURTEENTH AMENDMENTS to the
16 united states constitution, -- see GENERALLY case of
17 [SULLIVAN V LOUISIANA] (1993) 508 U.S. 275;
18 --- FURTHERMORE --- SUCH ERROR'S IMPLICATE DUE PROCESS
19 RIGHTS aswell as SIXTH amendment PRINCIPALS PRE-
   -SERVING THE EXCLUSIVE DOMAIN OF THE TRIER OF
20 FACT [CARRELLA V CALIFORNIA (1989)
21 491 U.S 263 at 265!
22 --"FUNDEMENTALLY UNFAIR"-- ERROR'S DURRING
23 TRIAL violates fourteenth amendment (see
24 [RIGGIN'S V NEVADA] (1992) 504 U.S. 127!
25 --- the JUDICIAL oBLIGATION TO POLICE STATE
26 CRIMINAL PROCEDURE'S TO ENSURE THAT THEY ARE
   consistant with OUR MOST BASIC NOTION'S of DECENCY
27 and FAIRNESS HAS SURVIVED THE SELECTIVE INCORPORATION
   Revolution and EXSTS INDEPENDENT of ANY SPECIFIC---
28

(8)

--- PROVISION OF THE BILL OF RIGHTS (see case of CHAMBERS V MISSISSIPPI (1973) 410 U. S. 284 at 294 - 295;

1 

2      The united states supreme court HAS ALSO
3 Held That it IS a violation of Due process of Law
4 Where state PROSECUTOR'S fail to Demonstrate or
5 PROVE each and every Element of the CHARGED
offense's Beyond a Reasonable DOUBT (see case
6 JACKSON V VIRGINIA (1979)  443  U. S. 307
7 at P. 324! --- and the ninth circuit HAS
8 Specifically Extended and applied these PRINCIPALS
to CALIFORNIA'S GANG ENHANCEMENT Statute's
9 in BRICENO V SCRIBNER (9TH CIR 2009) 555 f 3D
10 1069: And GARCIA V CAREY (9TH CIR 2005). 395
11 f. 3D 1099:
12      Among other Elements the state PROSECUTOR must
13 ESTABLISH and PROVE, That a Defendant Committed
the UNDERLYING felony with the "SPECIFIC intent
14 to PROMOTE, -- FURTHER or ASSIST the criminal
15 Street GANG --- and THIS IS NOT Satisfied BY
16 Mere MEMBERSHIP in a criminal street GANG (see
17 GARCIA V CAREY) supra at Pg 1102-1103 and N. #5
18 --- FURTHERMORE the CRIMES MAY NOT Be FOUND TO
19 Be GANG Related ---" Based Solex uPon PERPETRATORS
CRIMINAL HISTORY and GANG AFFILIATION" (see
20 BRICENO V SCRIBNER) supra at Pg 1078 and
21 foot note # 6 at P. 1089: WHATSMORE IS that
22 "BRICENO" court specifically noted that under
23 CALIFORNIA LAW GANG EXPERT "CANNOT (EVEN)
24 testify as to a Defendant's "specific intent"
25 in committing a CRIME BRICENO V SCRIBNER
9TH CIR 2009  555 f. 3D 1069 at 1089. fn #2 !!
26 
27      IN "BRICENO" and "GARCIA" case's the CRIME'S were
28 committed in CONCERT WITH other GANG MEMBER'S ---

(9)

--- IN RIVAL GANG'S TERRITORY -- GANG SLURS AND GANG SIGN'S WERE EXCHANGED aswell as other SIGNIFICANT INDICATIONS OF GANG RELATED ACTIVITY AND THOSE COURTS STILL FOUND <u>INSUFFICIENT PROOF</u> for all elements of said GANG OFFENSE'S !!!

--- HERE IN PETITIONERS CASE THE EVIDENCE AND THE RECORD IS TOTALLY DEVOID OF ANYTHING LIKE WHAT WAS PRESENT IN <u>BRICENO</u> AND <u>GARCIA</u> NO GANG SIGN'S -- SLUR'S OR WORD'S NOTHING WHAT-- SOEVER TO EVEN HINT OR INDICATE THAT SAID CRIME'S WERE actually BEING COMMITTED FOR ANY CRIMINAL STREET GANG ?! -- other THAN EXPERTS SUBJECTIVE, SPECULATION -- AND THAT PETITIONER USED TO BE <u>AFFILIATED</u> WITH THE HURLEY STREET GANG IN THE PAST -- BUT WAS NO LONGER A MEMBER NOR currently associate with SAID GANG

--- SIGNIFICANT ENOUGH to POINT OUT HERE IS that <u>PETITIONERS FIRST TRIAL RESULTED IN a HUNG JURY, DEADLOCKED at 7-5 FOR AQUITTAL</u>, JURIOR'S COULD NOT EVEN AGREE IF PETITIONER WAS THE PERPETRATOR ??!.. (EMPHASIS)

IT IS TRUELY HARD TO "IMAGINE" HOW THE DISTRICT COURT AND PANEL JUSTICES COULD CONCLUDE THAT THE aBOVE constitutional claim's -- DID NOT AMOUNT to a <u>"SUBSTANTIAL SHOWING"</u> THAT HIS constitutional RIGHTS HAD BEEN VIOLATED --- -- WHEN IT SHOULD BE ABUNDANTLY CLEAR THAT THE <u>ERROR'S</u> WERE SO SUBSTANTIAL THAT THEY DID IN FACT AND LAW, WARRANT REVERSAL AND REMAND !!?

(10)

IMPROPER USE OF GANG OFFENSE
DENIED PETITIONER A FAIR TRIAL
-- DUE PROCESS OF LAW AND DID
RENDER HIS JURY TRIAL FUNDE-
-MENTALLY UNFAIR

NOT ONLY DOES PETITIONER'S CONDUCT "FAIL"
TO MEET AND FALL WITHIN THE ELEMENTS OF THE
GANG OFFENSE ---- BUT WHATS MORE IS THAT IT
REALLY DOES NOT AND CANNOT HAVE ANY LEGITIMATE
PURPOSE OR FUNCTION AT HIS TRIAL -- AND WAS
IMPROPERLY UTILIZED BY PROSECUTION TO
EMOTIONALLY CHARGE AND CONTAMINATE & PREJUDICE
HIS JURY AND THE TRIAL PROCESS (SEE GENERALLY
CALIF PENAL CODE § 1170.1 (F) & PEOPLE V RODRIGUEZ
(2009) 47 CAL 4TH 501, HOLDING THAT STATE CANNOT
USE BOTH FIREARM OFFENSE AND GANG OFFENSE IN THE
SAME PROCEEDING'S (SEE ALSO APPENDIX TWO PG 4-7)
---- FURTHERMORE, GANG OFFENSE WAS WRONGFULLY
USED TO BOLSTER OR PROVE ELEMENT OF "IDENTITY"
IN AN ATTEMPT TO PREY ON JUROR'S EMOTION'S AND
SWAY THEM INTO BELIEVING OR ASSUMING THAT THE
UNDERLYING CRIME'S WERE COMMITTED FOR A CRIMINAL
STREET GANG --- THUS PETITIONER MUST BE GUILTY
WITHOUT REQUIRING THE STATE TO ACTUALLY PRESENT
CREDIBLE OR RELIABLE SOLID EVIDENCE OF SUCH !!
AND IMPROPERLY MANIPULATED THE JUROR'S TO
FEEL THAT PETITIONER WAS THE PERPETRATOR WITH-
OUT ANY DIRECT EVIDENCE THAT HE WAS IN FACT
THAT PERSON --- IN FACT ! EYE WITNESS
IDENTIFICATION AT TRIAL DID NOT EXIST, - THE
VICTIM AND OTHER WITNESS TESTIFIED THAT PETITIONER
WAS NOT THE PERSON WHO FIRED THE SHOTS AND WAS
NOT THE PERPETRATOR [ 2 RT: 68-69, 74, 104]
[ 2 RT: 142, 149, 152, 161, 163, 164]

(11)

--- Petitioner further Demonstrated that the improper proceedure's used at his trial violated "Due process" cause they Relieved Lightened or Reduced the states obligation to prove Each and Every element(S) of the charged offenses Beyond a Reasonabl DOUBT (see Inre: Winship (1970) 397 U.S. 358 at 364 (two also Sandstrom v Montanna (1979) 442 U.S 570 (See appendix two pg 7)

Next Petitioner also asserted and Demonstrated that these improper proceedure's and tactic's By State, violates His constitutional Right and Guarentee to " Presumption of Innocence citint and Relying on Norris v Risley (9th cir 1990) 918 f. 2D 828, -- Held Presumption of Innocence was impaired where numerous women wearint "women against Rape" Button's, attendint trial of a Defendant charged with Sexual assoult, or the case of U.S v olvera (9th cir 1994) 30 f. 3d 1195 at 1197, -- compellint Defendant to utter word's -- wear clothes or otherwise simulate the crime did violate "Right of "Presumption of Innocence" -- Both "norris" and "olvera" court's, noteint that "Presumption of Innocence" although not specifically Articulated in the constition -- ts a Basic comp- onant of a fair trial under our System of criminal Justice (citing) Estelle v williams (1976) 425 U.S 501, 503 also appendix two, pg 8

Next Petitioner also alleged and Asserted -- the improper use of the gang evidence and gang charge, Rendered His Jury trial "fundementally unfair" -- that this was nothing more than emotionally charged "scare tactics" all Designed to manipulate and Sway Juror's mind's -- that it was "Propensity" evidence ----

(12)

--- That UNDERMINED The JURIOR'S RESPONSIBILITY
to Determine The EXISTANCE of The ELEMENT'S
Based UPON SOLID, RELIABLE, CREDIBLE EVIDENCE
--- and PREY'D UPON JURIOR'S EMOTION'S AND
Lead them to BELIEVE that PETITIONER WAS The
type of PERSON WHO WOULD Committ SUCH type
of violent CRIME'S --- PETITIONER cited AND Relied
UPON ⌈MCKINNY V REES⌋ (9TH CIR 1993) 993 F.
2D. 1378 --- WHERE PROSECUTION CONVICTED That DEF-
-ENDANT Basically on The Basis of HIS CHARACTER
and PREVIOUS acts OR Life Style --- the NINTH CIRCUIT
HELD That THIS RENDERED HIS TRIAL "FUNDEMENTALLY UNFAIR"
AND THAN SUBSTANTIAL INJURIOUS effect OR Influence
IN Determining The JURY'S VERDICT citing U.S.
SUPREME COURT ⌈BRECHT V ABRAHAMSON⌉ 507
U.S. 619; (REVERSED and REMANDED)
⌈See MCKINNY V REES⌋ SUPRA at Pg 1385-1386
And ⌈APPENDIX TWO Pg 9-10-11⌋
--- PETITIONER'S Case SHARE'S These Same FACTOR'S AS
the "MCKINNY" case ABOVE And SHOULD Be AFFORDED
THE Same BELIEF !!!

⌈ "Cummulative Affect" ⌉

Petitioner asserted And Claimed THAT --- Cummulative
Effect of These ERROR'S, Resulted IN a TRIAL THAT
WAS SO INFECTED With UNFAIRNESS As to MAKE THE
Resulting CONVICTION'S A DENIAL of Due PROCESS
⌈DONNELLY V De CHRISTOFORO⌋ (1974) 416 U.S.
637 at 643; --- IN ANALYZEING PREJUDICE IN
a Case WHICH IT IS QUESTIONABLE WHETHER any
Single TRIAL ERROR EXAMINED IN ISOLATION IS
SUFFICIENTLY PREJUDICIAL to WARRANT REVERSAL
--- THE COURT'S HAVE RECOGNIZED THE IMPORTANCE
OF CONSIDERING THE CUMMULATIVE Effect OF ---

(13)

--- OF MULTIPLE ERRORS --- AND NOT TO SIMPLY CONDUCT AN ISSUE BY ISSUE ERROR REVIEW, See

1  U.S. V FREDERICK (9TH CIR 1996) 78 F 3D 1370, 1381

2  WHELCHEL V WASHINGTON (9TH CIR 2000) 232 F 3D

3  1197 AT 1212: AND MATTOCK V ROSE (6TH CIR 1984)

4  731 F 2D 1236 AT 1244: AND APPENDIX TWO PG 14

5  --- HERE THE DISTRICT COURT DID NOT EVEN

6  CONSIDER OR ASSESS THIS CASE FOR THE --- "CUMMULATIVE IMPACT" OF THESE ERRORS, ---

7  THUS, --- AS a BARE MINIMUM THIS INSTANT

8  COURT OF APPEALS SHOULD REMAND THE CASE

9  FOR THIS PURPOSE --- AND POSSIBLY EVEN AN

10 EVIDENTIARY HEARING AS WELL

11

12       " REMAND FOR EVIDENTIARY "

13        HEARING IS NECESSARY

14

15

16 ON GROUND ONE HEREIN --- "THAT PETITIONERS SIXTH

17 AMENDMENT RIGHTS WERE VIOLATED BY GANG EXPERTS OPINION TESTIMONY THAT PETITIONER WAS GUILTY"

18 --- THE STATE APPELLATE COURT ON DIRECT APPEAL

19 REFUSED TO ADDRESS THIS FEDERAL CONSTITUTIONAL CLAIM

20 AND THE CALIF. SUPREME COURT MERELY SUMMARILY

21 DENIED THE ENTIRE PETITION FOR REVIEW --- SO THE UNDERLYING RELEVANT FACTS ON THIS CLAIM WERE

22 "NEVER FULLY DEVELOPED" AND AS SUCH THE LOWER

23 DISTRICT COURT WAS REQUIRED TO ORDER AN EVIDENTIARY

24 HEARING! ---> THE MAGISTRATES REPORT AND

25 RECOMENDATION ON PG: 12, THE COURT NOTES THAT STATE COURT REFUSED TO ADDRESS THIS FEDERAL CLAIM

26 BECAUSE IT WAS NOT RAISED BY THE DEFENDANT

27 AT TRIAL --- AND THE MAGISTRATE CONCLUDED

28 THAT IT CAN DENY THIS CONSTITUTIONAL CLAIM ---

(14)

--- WITHOUT REACHING PROCEEDURAL DEFAULT ISSUE
--- WHERE THE OUTCOME WOULD BE THE SAME !!
1 -- SO FOR REASON'S OF MERE JUDICIAL ECONOMY
2 AND EFFICIENCY --- THIS CLAIM WAS ARBITRARILY
3 DENIED WITHOUT EVEN GIVEING IT DUE CONSIDERATION
4 SEE [MAGISTRATES R+R ATTACHED AS APPENDIX THREE]
5 --- FURTHERMORE IN MAGISTRATES REPORT ? RECOMMENDATION
6 ON PG: 11-12; FOOT NOTE NO. 3 ;--- THE MAGISTRATE
7 JUDGE CONCLUDED THAT AN EVIDENTIARY HEARING
8 WAS NOT REQUIRED BECAUSE PETITIONER'S CASE
9 DOES NOT SATISFY THE STATUTE ( 28 U.S.C.A -
SECTION 2254 (e)(2)
10 PETITIONER CLAIM'S THAT THIS WAS AN ERROR AND AN
11 INCORRECT STATEMENT OF THE LAW, AND ALSO A
12 "MISINTERPRETATION" OF THE CASE FACTS AND THE
13 CONTROLLING HIGHER COURT AUTHORITY ON THE ISSUE
14 -- FOR EXAMPLE ! --- ORDINARILY UNDER [28 U.S.C. 2254 -
15 (e)(2)] ---IF THE PETITIONER HAS FAILED TO DEVELOPE THE
16 FACTUAL BASIS OF A CLAIM IN STATE COURT PROCEEDING
17 AN EVIDENTIARY HEARING WILL NORMALLY NOT BE ALLOWED
18 HOWEVER. IN [WILLIAM'S V TAYLOR (2000)] 529 U.S.
420, 437,--- THE SUPREME COURT HELD THAT--- IF THERE
19 HAS BEEN NO LACK OF DILIGENCE AT RELEVANT STAGE'S
20 IN THE STATE PROCEEDING --- THE PRISONER HAS NOT
FAILED TO DEVELOPE THE FACTS UNDER 28 U.S.C. 2254(e)(2)
21 AND HE WILL BE "EXCUSED" FROM SHOWING COMPLIANCE
22 WITH THAT SUBSECTION'S REQUIREMENTS --- AND AN
23 EVIDENTIARY HEARING CAN BE ORDERD !!! SEE ALSO
[DRAKE V PORTUONDO] (2ND CIR 2003) 321 F. 3D 338, 347
24 --"EVIDENTIARY HEARING NOT BARRED BECAUSE PETITIONER
25 DILIGENTLY SOUGHT TO DEVELOPE FACTUAL BASIS UNDERLYING
26 HIS CLAIM'S, BUT WAS PREVENTED FROM DOING SO BY
27 STATE COURT ---" (ALSO SEE [SAWYER V HOFBAUER]
(6TH CIR 2002) 299 F. 3D 605 at 610 --- AND
28 [BRYAN V MULLIN] (10 TH CIR 2003) 335 F. 3D 1207,
AT 1215;

(15)

--- FURTHERMORE, A PETITIONER ON FEDERAL HABEAS CORPUS IS ENTITLED TO AN EVIDENTIARY HEARING-- --WHERE PETITIONER ESTABLISHES MERELY A COLORABLE CLAIM FOR RELIEF. AND WHERE PETITIONER HAS NEVER BEEN ACCORDED AN EVIDENTIARY HEARING IN STATE COURT [EARP V ORNOSKI] (9TH CIR 2005) 431 F. 3D. 1158, 1167: AND [TOTTEN V MERKLE] (9TH CIR 1998) 137 F. 3D 1172 [AT 1176:

FURTHER EXEMPLARY OF THE NEED FOR AN EVIDENTIARY HEARING WAS THE FACT THAT DISTRICT CLAIMED THAT [PEOPLE V ~~ALBILLAR~~ ALBILLAR] (2010) 51 CAL 4TH 47, 66, ~ AND [EMERY V CLARK] (9TH CIR 2011) 643 F. 3D. 1210, 1215. THESE CASE'S OVERRULED [BRICENO V SCRIBNER] SUPRA 555 F. 3D 1069 AND [GARCIA V ~~CAREY~~ CAREY] SUPRA 395 F. 3D 1099: [SEE MAG. R+R APPENDIX THREE PG 23. FN #5]

IT IS QUESTIONABLE WHETHER SUCH A RETROACTIVE JUDICIAL CONSTRUCTION IS LEGALLY PERMITTED   SEE CASE [BOUIE V COLUMBIA] (CITATION OMITTED)

PETITIONER SHOULD BE ENTITLE TO STATE OF THE LAW AT THE TIME OF THE COMMISSION OF SAID OFFENSE'S. MOREOVER, PETITIONER'S POSITION IS THAT DISTRICT COURT WAS WRONG AND THAT "BRICENO" AND "GARCIA" ARE STILL CONTROLLING AUTHORITY ON THE ISSUES. AND THAT ANY OTHER CONTRARY OR CONFLICTING STATUTORY CONSTRUCTION ARE UNCONSTITUTIONAL AND VIOLATE THE CANNONS'S OF STATUTORY CONSTRUCTION

THE ~~TRUE FACTS~~ TRUE FACTS HAVE NEVER BEEN FULLY DEVELOPED OR AIRED AND THE STATES GANG EXPERT MERELY INFORMED JURY HOW HE WANTED CASE TO BE DECIDED BY TELLING JURYOR'S HIS OPINION AND JUDGEMENT THAT PETITIONER WAS GUILTY AND COMMITTED THE UNDERLYING OFFENSE'S FOR BENEFIT OF CRIMINAL STREET GANG ~~ THE STATE PROSECUTOR AND GANG EXPERT TURNED CASE INTO A GANG RELATED INCIDENT ON THEIR OWN SELF-SERVING VOLITION TO BOLSTER THEIR CASE AGAINST PETITIONER WHEN THEY WERE EXPERIENCING SERIOUS PROOF PROBLEM'S

(16)

--~~ it is DIFFICULT to fathom, How it could
Be Gang Related when Petitioner was NOT and
HAD NOT HAD any ASSOCIATION. -- AFFILIATION
communication or interaction with anyone from
said GANG for a LONG, LONG time and HAD
not Been a GANG member any longer --- if THE
petitioner was even the perpetrator in the first
place ??? that if anything, the case is more closely
associated with a personal dispute and not GANG
Related activity --- the conduct and TRUE facts
Just simply ; DO NOT fall within the ambit
of the elements of the statute !!

An evidentiary Hearing is necessary to fully
Develope the TRUE facts -- then to Be measured
AGAINST WHICH ever of the Different statutory
constructions of the statute are actually legally
applicible to this case ?! And in light of the
controlling U.S supreme court and federal appellate
court Decision's and constitutional claim's cited
Herein

"
IMPORTANT QUESTION'S "
of
exceptional importance

These substantial constitutional RIGHTS and the
violation's thereof as asserted Herein - are By
their very Nature "IMPORTANT QUESTION'S" And
Have not Been Ruled on By this court, in the
context assert Herein --- thus ; the full court SHOULD
Re-visit these constitutional. Guarentee's + Rights
as they Relate to, and pertain to the circumstances
Herein advanced --- furthermore, --- these compart-
-mentalized constitutional violation's alleged ȩ asserted
Herein --- is the manifestation of the fact that
california state prosecutorial authorities Have Been
Just Running Amok and improperly ȩ unfairly
useing GANG enhancement statute As a catch all
And a mean's to convict people of crimes when ---

(17)

--- they cannot actually prove them with valid, solid, reliable and credible evidence and amounts to discrimination. Because the state disproportionately targets hispanic individual's -- and this court should grant an EN-BANC hearing hearing to address this -- and REIN IN the abuse of authority and power being engaged in by california law enforcement and their prosecutorial authorities

--- additionally matters of statutory construction are inherently issue's of "EXCEPTIONAL IMPORTANCE" and especially here, where these are conflicting judicial construction's of the same statute and that violate the cannon's of statutory construction and may be wholly or in part un-constitutional --- thus all the elements for EN-BANC rehearing are present and court should order a rehearing, and a vote from all member's of the "FULL COURT"

$$\boxed{\text{"CONCLUSION"}}$$

Petitioner asserts, that he has established and demonstrated that the panel justices "overlooked" dispositive portion's of -- and "misinterpreted" the controlling decision's from both united states supreme court's and federal court's of appeal's decision's -- and that panel decision denying "C.O.A." was in error ---- and petitioner has demonstrated his case presents question's of exceptional importance -- and as a bare minimum this court should clarify the conflict between the different statutory construction's of the same statute -- aswell as the conflicting opinion's set forth herein --- moreover, petitioner's case has satisfied all the necessary prong's to justify the EN-BANC rehearing --- thus petitioner is entitled to a rehearing and an EN-BANC "vote" from all member's of the full court ----

(18)

----AND IN TURN TO HAVE THE "CERTIFICATE OF APPEALABILITY"
[C.O.A] ISSUED AND TO PROVIDE PETITIONER WITH A
BREIFINT SCHEDULE FOR THE NINTH CIRCUIT COURT OF
APPEAL'S TO ADJUDICATE THE MERITS OF THESE HEREIN
SUBSTANTIAL CONSTITIONAL CLAIM'S


WHEREFORE, IT IS PRAYED AND RESPECTFULLY
REQUESTED THAT THIS COURT ORDER THE FOLLOWING
RELIEF:

(1)    ORDER A REHEARING!

(2)    ORDER A FULL "EN-BANC" VOTE FROM
       ALL MEMBER'S AND JUSTICES OF THE
       ENTIRE COURT!!

(3)    ORDER A "CERTIFICATE OF APPEALABILITY"
       BE ISSUED!!! ---AND ....

(4)--  ORDER A BREIFINT SCHEDULE FOR
       THE COURT TO HEAR AND ADJUDICATE
       THE MERITS OF THE CONSTITUTIONAL
       CLAIM'S AND VIOLATIONS!!!!

{ SEE NEXT PG: 20, FOR VERIFICATION } →

(19)

STATE OF CALIFORNIA                                    COUNTY OF KERN

## VERIFICATION

### C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC. 17460

I JOSe AntHony BORJA declare under penalty of perjury that: I am the

petitioner / Appellant in the above entitled action. I have read the foregoing documents and know the contents thereof and the same is true of my own knowledge, except as to matters stated therein upon information, and belief, and as to those matters, I believe they are true.

Executed this 24 day of July , 2013, Kern Valley State Prison.

Signature X _____
DECLARANT/PRISONER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PROOF OF SEVICE BY MAIL

### C.C.P. SEC. 1013(a) & 2015.5: 28 U.S.C. SEC. 1746

I JOSe AntHony BORJA , am a resident of California State Prison, in the County of KERN, State of California: I am over the age of eighteen (18) years and am/am not a party of the above entitled action. My state prison address is: P.O. Box 5704 , Delano, CA. 93216.

On July 24 , 2013, I served the foregoing petitON FOR ReHeaRing and RequesT FoR "EN-BANC" consiDeratON'S, pg 1-19, comPlete with Appenix's one -- two. THree & letter foR couRt (cleRks) & JusticEs of THe 9TH ciRcuiT

Set forth exact title of document(s) served

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s) with postage thereof fully paid, in the United States Mail, in a deposit box so provided at KERN VALLEY STATE PRISON, Delano, CA. 93215.

① AttoRNey GeNeRal foR tHe state OF califoRNiA 300, soutH spring st. #1702, los angeles, caliF 90013
② U.S. Dist couRt central DistRict of couRt los angeles 312. N. spring st #6-8, los Angeles ca. 90012 - 4793

List parties served

There is delivery service by United States Mail at the place so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: X 7/24/13                    X _____
DECLARANT/PRISONER

(20)

# APPENDIX
## ONE

The ninth circuit Panel DEZISION - Denying The
certificate of appealability   Dated: 6-19-13

**FILED**

UNITED STATES COURT OF APPEALS

JUN 19 2013

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSE ANTHONY BORJA,

               Petitioner - Appellant,

   v.

MATTHEW L. CATE,

            Respondent - Appellee.

No. 12-56187

D.C. No. 2:09-cv-02420-DDP-S
Central District of California,
Los Angeles

ORDER

**RECEIVED**
CLERK, U.S. DISTRICT COURT

6/19/2013

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DLM_____ DEPUTY

Before:    PAEZ and MURGUIA, Circuit Judges.

The request for a certificate of appealability is denied. *See* 28 U.S.C.

§ 2253(c)(2). All pending motions, if any, are denied as moot.

# "APPENDIX"
## TWO

The Petition to the Ninth Circuit, for the Issueance of the Certificate of appealability

JOSE ANTHONY BORJA
CDCR # T-54311
P.O. BOX 5104
Deland. Co. 93216
In PRO-se

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE ANTHONY BORJA ) | Case NO.- 12-56187 |
| Petitioner: ) | DIST Court Case NO. 09-2420 |
| ) | "Petition For Issuance of" |
| Vs. ) | Certificate of appealability |
| ) | |
| matthew Cate, CDCR ) | |
| Secretary ) | |
| RESPONDENT ) | |

To: The Honorable Justices of the United States
Court of appeals.- For the NINTH CIRUIT

Comes the Petitioner "Jose Anthony Borja" acting as His
own Counsel- In PRO-se.-- Respectfully moves
the Honorable Justices of the NINTH CIRCUIT Federal
Court of appeals For an order, Issueing the
"Certificate OF appealability"

THIS motion IS Based on the Grounds that
There Exist Substantial evidence that Petitioner's
Constitional Rights Have Been violated

Petitioner sets Forth the following Facts
and Law IN Support OF HIS Request For the
Issueance of the "Certificate of appealability"

(1)

1.) Petitioner filed a petition for writ of Habeas Corpus in the federal District Court - 28 U.S.C. § 2254 from California state court conviction --- Claiming that his constitutional Rights were violated and that the state courts adjudications were contrary to or involved an unreasonable application of clearly established federal law -- as determined by the supreme court of the united states --- and

--- Resulted in a Decision that was Based on an unreasonable Determination of the facts in light of the evidence presented in the state court proceeding

2.) On Sept 1 - 2011, Magistrate Judge issued a Report and Recommendation that Petitioner's Habeas Corpus be Denied and Dismissed -- The District court judge adopted magistrates recommendations, and Denied and Dismissed the Habeas corus --- Next Petitioner filed an initial request for certificate of appealability on 11-29-2011: -- subsequently on June 5th - 2012 the District court judge, issued an order denying the certificate of appealability --- Next the Petitioner filed a timely notice of appeal on June 20th 2012

Petitioner points out that the entire Record from the District court - which Included state lodged documents aswell !! --- are on file with the ninth circuit case No. 12-56187 -- docket item # 2:

Petitioner Respectfully Requests that this instant court take Judicial notice of the entire case file from the District court - and to treat those documents, -- Records and Pleadings as if though they were fully and fairly set forth in this instant motion for issuance of appealability

3.) ORDINARILY, TO APPEAL THE DENIAL OF A FEDERAL HABEAS CORPUS PETITION. AEDPA REQUIRES A PETITIONER TO OBTAIN A "CERTIFICATE OF APPEALABILITY" (COA) 28 U.S.C. §2253 (C)(2) SEE ALSO RULE #22(B) OF F.R.A.P.

THIS REQUIREMENT ALSO APPLIES TO APPEAL'S FROM DISTRICT COURTS DISMISSAL OF A HABEAS CORPUS PETITION, --- SECTION 2253(C)(2) AS AMENDED BY THE AEDPA, PROVIDES THAT A CERTIFICATE OF APPEALABILITY MAY ISSUE, --- IF THE APPLICANT HAS MADE A SUBSTANTIAL SHOWING OF THE DENIAL OF A "CONSTITUTIONAL RIGHT" [SLACK V MCDANIEL] (2000) 529 U.S. 473. --- TO OBTAIN A [COA] UNDER §2253 (C) A HABEAS PETITIONER MUST MAKE A SUBSTANTIAL SHOWING THAT REASONABLE JURISTS COULD DEBATE OR DISAGREE WITH THE DISTRICT COURTS DECISION ON THE PETITIONS CLAIM'S --- OR THAT THE ISSUE'S PRESENTED WERE ADEQUATE TO DESERVE ENCOURAGEMENT, TO PROCEED FURTHER (SEE [BAREFOOT V ESTELLE] (1983) 463 U.S. 880, --- [120 L. ED 2D 5040 at PG 554 "SLACK" SUPRA (ABOVE)

4.) PETITIONER MAINTAINS THAT THE DISTRICT COURTS DENIAL AND DISMISSAL OF HABEAS CORPUS, WAS WRONGFULLY DECIDED AND ERRONEOUS AS A MATTER OF LAW — AND IN KEEPING WITH THIS ASSERTION, SETS FORTH THE FOLLOWING FACTS AND LAW DEMONSTRATING AND MAKING THE REQUISITE SHOWING, THAT HIS CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED !!!
--- AND HERE AGAIN, PETITIONER SPECIFICALLY REQUESTS THE NINTH CIRCUIT COURT TO TAKE JUDICIAL NOTICE OF THE ENTIRE CASE FILE, --- FROM THE LOWER COURTS ON FILE [SEE 9TH CIR DOCKET ITEM NO. 2] --- AND TO TREAT THOSE PLEADINGS — RECORD'S — AND DOCUMENTS AS IF THOUGH FULLY SET FORTH IN THIS INSTANT PETITION FOR CERTIFICATE OF APPEALABILITY HEREIN --- AND ESPECIALLY THE POINTS AND AUTHORITIES AND MEMORANDUM'S OF LAW FILED BY THE RESPECTIVE PARTIES BELOW ??!!

(3)

5.)

THE IMPROPER USE OF GANG ENHANCEMENT CHARGE AND "GANG" EXPERT WITNESSES TESTIMONY OPERATED TO VIOLATE PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

PETITIONER MAINTAINS THAT THE ONLY PURPOSE THE GANG CHARGE SERVED WAS TO PREJUDICE AND CONTAMINATE HIS JURY AND DENY HIM A FAIR TRIAL AND DUE PROCESS OF LAW, — AND RENDERED HIS TRIAL "FUNDEMENTALLY UNFAIR"

FIRST OF ALL THE SOLE LEGISLATIVE PURPOSE AND FUNCTION OF THE STATES GANG ENHANCEMENT STATUTE [CAL PENAL CODE § 186.22] — IS TO IMPOSE ADDITIONAL PUNISHMENT FOR CRIMES WHEN THEY ARE COMMITTED FOR BENIFIT OF "STREET GANG" HOWEVER THE CIRCUMSTANCES THAT ARE PRESENT IN PETITIONER'S CASE CLEARLY INDICATE THAT THE STATE IS JUST SIMPLY NOT PERMITTED TO USE BOTH THE FIREARM ENHANCEMENT AND THE GANG ENHANCEMENT THE CAN ONLY LEGITIMATELY USE ONE OF THOSE SEE CALIF PENAL CODE § 1170.1 (F) AND [PEOPLE V RODRIGUEZ] (2009) 47 CAL 4TH 501. SEE ALSO PEN CODE § 654.

THE GANG ENHANCEMENT STATUTE COULD NOT AND CANNOT BE USED TO IMPOSE ADDITIONAL PUNISHMENT — SO THE ONLY PURPOSE IT SERVED WAS TO PREJUDICE AND CONTAMINATE JURROR'S MINDS AND WAS INAPPROPRIATELY USED TO PROVE "IDENTITY" AND TO WRONGFULLY SWAY JURRORS TO BELIEVE THAT CRIMES WERE COMMITTED FOR BENIFIT OF THE GANG AND THAT IT WAS SOME KIND OF GANGLAND OR GANGSTERS HIT OR EXECUTION ATTEMPT THE GANG CHARGE SHOULD NOT OF EVEN BEEN PART OF THE PETITIONER'S JURY TRIAL AT ALL !!! IN THE FIRST INSTANCE!

THE PROSECUTION INTENTIONALLY AND INAPPROPRIATELY USED THE GANG CHARGE AND IMPROPERLY MADE IT PART OF THE TRIAL — SO THAT JURROR'S WOULD ASSUME THAT CRIMES WERE COMMITTED FOR THE STREET GANG'S AND SO THE DEFENDANT MUST HAVE BEEN THE PERPETRATOR — THE PROSECUTION USED THE GANG CHARGE TO CONVINCE JURY THAT PETITIONER WAS THE PERPETRATOR OR THE SHOOTER WHEN THERE WAS NO DIRECT EVIDENCE THAT PETITIONER WAS THIS PERSON — IN FACT EYE — WITNESS IDENTIFICATION AT THE TRIAL WAS LITERALLY NON— EXISTANT — BOTH VICTIM AND OTHER WITNESS TESTIFIED AT TRIAL THAT PETITIONER WAS "NOT THE PERSON WHO FIRED THE SHOTS (EMPHASIS ADDED)" ————

NOTE: ——— ATTORNEY GENERAL CONCEDED ON DIRECT APPEAL THAT § 186.22 GANG ENHANCEMENTS CANNOT BE USED OR IMPOSED IN A CASE THAT CARRIES A LIFE TERM ??!!

(4)

5a (continued)

---- The prosecution used the Gang Enhancement Charge and Gang Experts testimony and subjective Hearsey opinions to inappropriately and prejudicially establish the element of identity and attempt to hood-wink the jury into believing that petitioner was the shooter or perpetrator

-- in short --- the Gang enhancement was used to prove the the element of "IDENTITY" when there existed NO eye witness identification or other probitive evidence on issue --other than some purported pretrial, extra-judicial interview conducted by a law enforcement officer. that was not tapped or otherwise recorded — totally contrary to training guidelines and policies and procedures and that involved witnesses who DO NOT even speak ENGLISH whatsmore is that at trial these same two witnesses under oath and-through an interpreter -- BOTH Denied that said interview or out of court id - ever took place — as a bare minimum here -- there just simply did not exist sufficient evidence at trial to prove beyond a reasonable doubt the element of identity and under JACKSON V. VIRGINIA (1979) 443. U.S. 307. violates due process and compels reversal ???!!

--- and just for the sake of argument — unless the victim and second witness had personal knowlege ---where they did in fact percieve petitioner as the shooter --- there testimony and id at trial is simply, not even admissible and not relevant as a matter of law (see calif. evidence code § 403(c))

take away the Gang charge offense and all that is left would be an empty shell- without any viable or probitive evidence that is relevant and admissible that could of been used or relied on to sufficiently prove all of the necessary elements of the underlying offense's !!

significant enough to point out here! is that the first trial of this matter resulted in a hung jury 7-5 for aquittal - because the jurors could not agree that petitioner was the shooter ( EMPHASIS )

Petitioner maintains,-- that to allow the Gang charge and Gang experts subjective Hearsey testimony that pertains to or relates to ultimate issue's of fact on guilt as to establish necessary elements of the underlying offense's ---- violates petitioner's 6TH and 14TH Amendment rights and invades the province of the jury to determine all relevant facts, and that are based upon admissible, relevant evidence !!


(5)

--- --- And cases that could not be cited out on direct appeal --- " to allow such evidence deprives a defendant of due process of law and his right to a jury trial under the sixth and fourteenth amendment to the U.S. constitution ( see Gen. SULLIVAN V LOUISIANA (1993) 508 U.S. 275; see also PEOPLE V PARTIDA (2005) 37 cal App 4th 428 at Pg 435, see (AOB pg 17) Direct appeal, state court where court found that defendants objection to gang testomony under evidence code § 352, --- allowed him to argue on appeal that error violated his fourteenth amendmat right to due process --- !)

--- --- Furthermore ... such errors implicate due process rights aswell as sixth amendmat ~~~~~~~ principals preserving the exclusive domain of the trier of fact see case of CARRELLA V CALIFORNIA (1989) 491 U.S. 263 at 265,

where a jury is not given an opportunity to decide relvant factual questions the defendant is deprived of his right to a jury trial U.S V MCCLAIN (5TH CIR 1977) 545 F.2D 988;

evidence is unfairly prejudicial --- if it will induce the jury to decide the case on an improper basis --- rather than on evidence presented U.S. V miles (7TH CIR 2000) 207 F.3D 988;

evidence that is at least as consistant with --- "INNOCENCE" as with GUILT ; --- is insufficiant to support a guilty verdict U.S. V BERGER (2ND CIR 2000) 244 F.3D 107;

--- "fundementally unfair" errors during trial violated 14TH amendmat RIGGINS V NEVADA (1992) 504 U.S. 127, --- the primary purpose of the "fundemental fairness" inquiry is to provide respect enforced by law for that feeling of just treatment which has evolved thru the centuries of Anglo-American constitutional history and civilization Joint anti facist Refugee committee V McGrath (1951) 341 U.S 123; --- the judicial obligation to police state criminal proceedures to ensure that they are consistant with our most basic notions of decency and fairness has survived the selective incorporation revolution and exists independant of any specific provision of the bill of rights (see CHAMBERS V MISSISSIPPI (1973) 410 U.S. 284, 294-95 also see BRICENO V SCRIBNER (9th cir 2009) 555 F.3D 1069 at 1089 fn.#1 where IF an expert expressed his judgemat that crimes were committed for the benifit of the gang, this would be improper and amount to an expert opinion that defendant was guilty (EMPHASIS ADDED)

(6)

--- FURTHERMORE, THE PETITIONER DEMONSTRATES PRIOR DISCUSSION ON Pg 17; Lw 10-19: ASSERTS THAT THE ERRONEOUS ADMISSION OF GANG EXPERT TESTIMONY IS ONLY SUBJECT TO FEDERAL HABEAS CORPUS --- --- IF A SPECIFIC CONSTITUTIONAL GUARENTEE IS VIOLATED --- OR THE ERROR IS OF SUCH MAGNATUDE THAT RESULTS IN A DENIAL OF DUE PROCESS AND THE FUNDEMENTAL RIGHT TO A FAIR TRIAL --(CITING) HENRY V KERNAN (9TH CIR 1999) 197 F 3D 1021, 1031:

--- ADDITIONALLY, THE ADMISSION OF EVIDENCE VIOLATES DUE PROCESS WHEN TWO CIRCUMSTANCES ARE MET: (1) THERE ARE NO "PERMISSIBLE INFERENCES THE JURY MAY DRAW FROM THE EVIDENCE; AND --- --- (2) THE EVIDENCE IS OF SUCH QUALITY AS NECESSARILY PREVENTS A FAIR TRIAL JAMMAL V VAN DE KAMP (9TH CIR 1991) 926 F. 2D 918, 920:

THIS PETITIONER HEREIN ASSERTS AND MAINTAINS THAT ALL OF THESE STANDARDS AND PRONG'S CITED ABOVE ARE PRESENT IN HIS CASE !!

6.) FOR EXAMPLE !? THE PROSECUTION FILED A FRAUDULENT --- COUNTERFEIT GANG CHARGE OFFENSE THAT ONLY SERVED TO POISON AND TAINT HIS JURY TRIAL AND --- CREATED AN ILLEGAL "IMPERMISSIBLE INFERENCE" OR PRESUMPTION IN JUROR'S MINDS --- THAT PETITIONER WAS GUILTY WITHOUT REQUIRING THE PROSECUTION TO PROVE THIS WITH EVIDENCE --- AND THIS REDUCED, --- RELIEVED AND LIGHTENED STATES BURDEN TO PROVE EACH AND EVERY ELEMENT OF THE CRIMES BEYOND A REASONABLE DOUBT --- AND SHIFTED THE BURDEN OF PROOF TO THE DEFENSE --- THIS VIOLATES DUE PROCESS OF LAW (SEE INRE! WINSHIP) (1970) 397 U.S 358, 364: AND ALSO SANDSTROM V MONTANNA (1979) 442 U.S. 510

THE PROSECUTION IN STATE COURT "DID NOT" PRESENT ANY SOLID, PROBATIVE, RELEVANT OR ADMISSIBLE EVIDENCE THAT SUFFICIENTLY ESTABLISHED PETITIONER AS THE PERPETRATOR OR THE SHOOTER --- OR THAT HE EVEN FIRED A GUN --- NO GUN WAS IN EVIDENCE --- NO GUN SHOT RESIDUE EVIDENCE --- NO BALLISTIC'S --- --- NO EYE WITNESS IDENTIFICATION --- NOTHING WHATSOEVER --- --- EXCEPT THE EMOTIONALLY CHARGED SCARE TACTIC EVIDENCE RELATING TO STREET GANG'S --- AND ALL THIS STUFF ABOUT GANG'S AND GANG MEMBER'S --- POISONED THE JURY --- AND THE WAY THAT THEY BOOT STRAPPED ALL OF THIS TO PETITIONER --- CREATED THE IMPRESSION IN THEIR MIND'S OF THE JURORS --- THAT PETITIONER IS DANGEROUS AND HAS A DISPOSITION OR PROCLIVITY TO COMMIT THESE TYPES OF VIOLENT CRIMES, AND THUS FORMULATED THE OPINION THAT HE PROBABLY ALSO COMMITTED THE INSTANT OFFENSE'S ASWELL ?! --- THESE CIRCUMSTANCES DO NOT COMPART WITH DUE PROCESS AND A --- FAIR TRIAL !!!

(7)

7.)

PETITIONER ASSERTS AND CLAIMS THAT HIS RIGHT TO "PRESUMPTION OF INNOCENCE" WAS VIOLATED AND HE WAS DENIED A FAIR TRIAL

--- THE "PRESUMPTION OF INNOCENCE" ALTHOUGH NOT ARTICULATED IN THE CONSTITION --- IS A BASIC COMPONENT OF A FAIR TRIAL UNDER OUR SYSTEM OF CRIMINAL JUSTICE ( SEE [Estelle v. Williams] (1976) 425 U.S 501, 503?

--- THIS PRINCIPAL HAS ARISEN IN THE PAST IN THE CONTEXT OF PRISON GARB OR COURT ROOM SECURITY MEASURES --- HOWEVER THE COURTS HAVE ALSO EXTENDED AND APPLIED IT TO OTHER FACTORS THAT UNDERMINE THE FAIRNESS OF THE FACT FINDING PROCESS FOR EXAMPLE! IN [NORRIS V RISLEY] (9TH CIR 1990) 918 F. 2D. 828, --- PRESUMPTION OF INNOCENCE IMPAIRED, WHERE NUMEROUS WOMEN WEARING "WOMEN AGAINST RAPE" BUTTONS ATTENDED TRIAL OF DEFENDANT CHARGED WITH SEXUAL ASSAULT

--- OR THE CASE OF [UNITED STATES V OLVERA] (9TH CIR 1994) 30 F. 3D 1195, --- COMPELLING DEFENDANT TO UTTER WORDS THE ROBBER SPOKE TO BANK TELLER --- OR TO REQUIRE A DEFENDANT TO PUT ON A SKI MASK -- WAIVE A TOY GUN AND SHOUT "GIVE ME YOUR MONEY" [ID. AT 1197]

PETITIONER HERE IN THIS INSTANT CASE ASSERTS THAT CIRCUMSTANCES -- EVENTS --- AND UNSCRUPULOUS TRIAL TACTICS THAT WERE EMPLOYED BY PROSECUTION AT HIS JURY TRIAL --- OPERATED TO VIOLATE HIS " PRESUMPTION OF INNOCENCE " AND DENIED HIM A FAIR TRIAL AND DUE PROCESS --- FOR EXAMPLE! [INCLUDING BUT NOT LIMITED TOO] ----- FIRST OF ALL THE PROSECUTION DID NOT ESTABLISH WITH DIRECT RELIABLE EVIDENCE --- THAT PETITIONER DID ANYTHING --- OTHER THAN THE FACT THAT HE MAY HAVE -- IN THE PAST HAD SOME TYPE OF ASSOCIATION OR INTERACTION WITH THE STREET GANG IN QUESTION - OR HAD KNOWN OR BEEN AQUINTED WITH A COUPLE OF THEM --- NO-ONE AT TRIAL WAS ABLE TO IDENTIFY PETITIONER AS THE PERPETRATOR --- THEY OBTAINED CONVICTIONS OF THESE UNDERLYING OFFENSES THROUGH SPECULATION --- CONJECTURE AND THE SUBJECTIVE PERSONAL BELIEFS OR OPINIONS @ FROM THE SAME PEOPLE WHO WERE ON THE OPPOSING PARTIES TEAM AND THAT WERE PROSECUTING HIM -- AND WITH EXTRA JUDICIAL --- DOUBLE -- --- TRIPPLE HEASEY STATEMENTS ---- THAT CONFLICTED WITH THE TESTIMONY ACTUALLY GIVEN AT TRIAL UNDER OATH --- THE TRIAL WAS AN EMPTY SHELL WITH NO RELIABLE EVIDENCE, -- THAT WAS CONDUCTED WITH SMOKE AND MIRRORS  INSTEAD OF EVIDENCE?!

(8)

8.) --- #N KEEPING WITH PETITIONER'S ASSERTION THAT HE WAS DENIED "DUE PROCESS" AND THAT HIS TRIAL WAS "FUNDEMENTALLY UNFAIR" --- Petitioner REITERATES that the PROSECUTION'S CASE REVOLVED ENTIRELY ARROUND, - USEING THE SCARE TACTIC'S ABOUT THE CRIMINAL STREET GANG and BOOT-STRAPPING PETITIONER TO THEM BY PAST PRIOR association OR CAUSUAL INTERACTION -- CLOTHES-- TATOO - ETC - ETC --- then telling THE JURROR'S That said GANG'S PRIMARY ACTIVITIES ARE VIOLENT CRIME'S --SOME OF WHICH WERE EXACT same CRIME'S PETITIONER WAS CHARGED with ---- THIS IS POWERFULL STUFF to A JURY OF REGULAR CITIZEN'S, -AND CREATES IN THE MIND'S OF THE JURROR'S , THAT IF PETITIONER WAS INVOLVED WITH THESE DANGEROUS VIOLENT, UNSAVORY GANG MEMBER'S -- That He must also BE GUILTY OF THE INSTANT VIOLENT OFFENSE'S TO WHICH He WAS ON TRIAL FOR !! --WHEN NO EVIDENCE WAS PRESENTED TO PROVE EVERY ELEMENT OF THOSE OFFENSE'S BEYOND A REASONABLE DOUBT ---- THIS IS CONSTITITIONALLY INVALID for #T UNDERMINES THE FACT FINDER'S RESPONSIBILITY to DETERMINE THE EXISTANCE OF THE ESSENTIAL ELEMENTS OF THE CRIME'S ---BEYOND A REASONABLE DOUBT --AND BASED UPON FACTS and evidence ---AND NOT BASED ON SPECULATION & CONJECTURE and SUBJECTIVITY OR PERSONAL BELIEFS OF OPINION'S !! AT PETITIONER'S TRIAL -- THIS AMOUNTED TO NOTHING SHORT OF "PROPENSITY EVIDENCE" and only SERVED TO ~~the~~ PREY ON THE EMOTIONS OF THE JURY and LEAD THEM TO MISTRUST THE DEFENDANT ---and LEAD THEM TO BELIEVE OR assume that He WAS THE TYPE OF PERSON WHO WOULD COMMITT SUCH CRIME'S ?!! · THE NINTH CIRCUIT COURT OF APPEAL'S CASE OF : ---- {MCKINNEY V REES} 9th CIR 1993 993 F. 2D 1378, IS VERY SIMILAR and CLOSELY ASSOCIATED WITH PETITIONER'S CASE : -- IN THIS CASE THE FATHER AND SON WERE FOUND AT THE SCENE [THEIR HOUSE] OF a MURDER --- THEIR BLOODY CLOTHES WERE FOUND AT DIFFERENT LOCATION'S OF SAID HOUSE -- OTHER THAN THE EXISTANCE OF THE DEAD BODY AT THE HOUSE, --THERE WAS VIRTUALLY NO OTHER EVIDENCE AGAINST DEFENDANT -- THE PROSECUTION USED DEFENDANT'S FACINATION WITH KNIVES AND HIS COLLECTION OF KNIVE'S ---AND PAINTED a PICTURE OF HIM WITH A COMMANDO LIFESTYLE AND BASICALLY CONVICTED "MCKINNEY" ON THE BASIS OF HIS SUSPICIOUS CHARACTER AND PREVIOUS ACTS ----

(9)

—— THE HIGH COURT STATED THAT THIS WAS ERRONEOUS USE OF "PROPENSITY EVIDENCE" THAT RENDERED "MCKINNY'S" TRIAL FUNDEMENTALLY UNFAIR IN VIOLATION OF THE DUE PROCESS CLAUSE —AND FOUND THAT THIS HAD SUBSTANTIAL INJURIOUS AFFECT OR INFLUENCE IN DETERMINING THE JURY'S VERDICT (CITING) BRECHT V ABRAHAMSON 507 U.S. 619; AND GRANTED HABEAS CORPUS RELIEF ("EMPHASIS ADDED")

THE COURT FURTHER STATED —— IN THIS SITUATION —— "MCKINNY'S" TRIAL WAS IMPERMISSIBLY TAINTED BY "IRRELLEVANT" EVIDENCE, SUCH THAT IT IS MORE THAN REASONABLY LIKELY THAT THE JURY DID NOT FOLLOW ITS INSTRUCTIONS TO WEIGH ALL THE EVIDENCE CAREFULLY —— BUT INSTEAD SKIPPED CAREFUL ANALYSIS OF THE LOGICAL INFERENCES RAISED BY THE CIRCUMSTANTIAL EVIDENCE —— AND CONVICTED "MCKINNY" ON THE BASIS OF HIS SUSPICIOUS CHARACTER AND PREVIOUS ACTS IN VIOLATION OF OUR COMMUNITY'S STANDARD'S OF FAIR PLAY (MCKINNY ID at PG 1385)

—— FURTHERMORE, THE COURT REGECTED THE CONCLUSION THAT THE ERRONEOUSLY ADMITTED CHARACTER EVIDENCE WAS NOT ONLY IRRELLEVANT —— BUT JUST THE SORT OF EVIDENCE LIKELY TO HAVE A STRONG IMPACT ON THE MINDS OF THE JURORS —— ——

—— AND BECAUSE OF THE LACK OF A "WEIGHTY" CASE AGAINST "MCKINNY" AND PERVASSIVENESS OF THE ERRONEOUSLY ADMITTED EVIDENCE THROUGHOUT THE TRIAL — WE THINK IT HIGHLY PROBABLE THAT THE ERROR HAD A SUBSTANTIAL INJURIOUS EFFECT AND INFLUENCE UPON THE VERDICT !!! MCKINNY SUPRA at PG 1386

—— IT IS PART OF OUR COMMUNITY'S SENSE OF FAIR PLAY THAT PEOPLE ARE CONVICTED BECAUSE OF WHAT THEY HAVE DONE! —— NOT WHO THEY ARE THIS RENDERED TRIAL FUNDEMENTALLY UNFAIR (FBD)

SEE ALSO CASE OF ALCALA V WOODFORD (9TH CIR 2003) 334 F 3D 862 at 887! —— WHERE KNIFES IN DEFENDANTS HOME SAME BRAND AS MURDER WEAPON —— FOUND, IRRELLEVANT ADDMISSION OF IRRELLEVANT EVIDENCE WAS A VIOLATION OF THE RIGHT TO FAIR TRIAL AND DUE PROCESS GUARENTEED BY FEDERAL CONSTITUTION! —— —— WHATSMORE IS THAT THE TWO CASE'S RELIED UPON BY DISTRICT COURT TO DENY PETITIONER'S HABEAS CORPUS [JAMAL V VAN DE KAMP] SUPRA 926 F. 2D 918; AND [HENRY V KERNAN] SUPRA 197 F. 3D 1021 — ASSERTING THAT FEDERAL HABEAS CORPUS COURTS DO NOT REVIEW QUESTION'S OF STATE EVIDENCE LAW [SEE MAGISTRATES R+R PG 17] HOWEVER BOTH THESE CASE'S WERE CITED BY MCKINNY DISTINGUISHED AND FOUND INAPPLICABLE ?? MCKINNY V REES SUPRA 993 F 2D at 1384-1385. FN 11

(10)

-- Where court cited Henry V Estelle (9th cir. 1993) 993 F 2D

2D 1423, in which it also found that erroneous admission of irrellevant prior acts evidence was distinct from the situation in Estelle V McGuire 502 U.S 62; -- and a violation of Due Process that necessitated the grant of Habeas under Brecht

The herein instant petitioner's case also requires Reversal and Remand under these same legal principal's and Rationale ?!

Here in petitioner's case, there has been a Huge "Miscarraige of Justice" -- Because he is "Actually innocent"

Furthermore, there existed numerous other witnesses on that street the day of the shooting, And law enforcement never intervieed or tried to talk to any of them -- and Recently Petitioner has learned that there may of been many of those witnesses who had seen what happened, -- And saw a similar But different black car from same neighborhood, that belonged to a violent street gang, "that was not in fact this petitioner" -- And that lived in the area aswell -- However the lawyer's below in state court, did not adequately investigate into this -- nor try develope such facts -- and thus were never given due consideration

9.)
Next is that, not only was gang charge + expert wittness testomony used to bolster and inappropriately prove or create impermissible inference of identity --- But That also there was Inssufficient evidence at trial to prove each and every element of the gang enhancement which is also a violation of Due Process of law under U.S. constition Jakson V Virginia supra 443 U.S 307; Ande: winwship supra 397 U.S 358

The ninth circuit has recently ruled on this same issue, under identical or very similar circumstances that are present in this petitioners instant case, see Garcia V Carey (9th cir 2005) 395 F. 3D 1099; And Briceno V Scribner (9th cir 2009) 555 F. 3D 1069; --- in both these case's the court found an un--reasonable application of "Jackson V virginia" supra and Reversed and Remanded those case's ("emphasis added") ---

(11)

--- WHATS MORE, THIS CASE HAD EVEN MORE
GANG EVIDENCE, THAN PETITIONERS CASE HEREIN — FOR EXAMPLE!
IN "GARCIA" SUPRA 395 F. 3D AT 1101, - THE DEFENDANT
COMMITTED A ROBBERY ON GANG TURF, AND ANNOUNCED HIMSELF
TO VICTIM AS "Little Risky from ElMonte FLORES", HIS GANG
AND WAS ALSO WITH TWO OR THREE OF HIS COHORTS ASWELL

IN "BRICENO" HIM AND HIS CO-DEFENDANTS BOTH
ACTIVE GANG MEMBERS OF THE HARD TIMES STREET GANG COMMITTED
A SERIOUS OF MULTIPLE ROBBERIES TOGETHER, IN COSTA MESA
— GARDEN GROVE AND ANAHEIM --- BOTH HAD GANG TATOOS
ASWELL --- HELD INSUFFICIENT ??!!

FIRST, THE PROSECUTOR MUST ~~FIRST BE~~ DEMONSTRATE THAT
THE DEFENDANT COMMITTED A FELONY FOR THE BENIFIT OF,—
, AT THE DIRECTION OF, OR IN ASSOCIATION WITH A CRIMINAL
STREET GANG ------- SECOND ---THE PROSECUTOR MUST
SHOW THAT THE DEFENDANT COMMITTED THE CRIME'S WITH THE
"SPECIFIC INTENT" TO PROMOTE, FURTHER OR ASSIST
IN ANY CRIMINAL CONDUCT BY GANG MEMBERS -- FURTHERMORE
THE COURT HAD PREVIOUSLY RECOGNIZED THE IMPORTANCE OF KEEPING
THESE TWO REQUIREMENTS SEPARATE --- AND HAVE EMPHASIZED THAT
THE SECOND STEP IS NOT SATISFIED BY MERE MEMBERSHIP IN
A CRIMINAL STREET GANG ALONE CITING [GARCIA V CAREY]
SUPRA 395 F. 3D 1099 AT 1102-03 AND N. 5
[BRICENO V SCRIBNER] SUPRA 555 F. 3D AT Pg 1078:
AND FOOTNOTE NO. 6 AT Pg 1089: WHERE COURT EMPHASIZED THAT CRIMES
MAY NOT BE FOUND TO BE GANG RELATED, BASED SOLELY UPON A
PERPETRATORS CRIMINAL HISTORY AND GANG AFFILIATION" ("EMPHASIS")

THIS IS EXACTLY WHAT HAS HAPPENED IN
PETITIONERS CASE HEREIN --- BECAUSE THERE WAS LITERALLY NO
EVIDENCE WHATSOEVER --- EXCEPT THE GENERIC, SPECULATION AND
CONJECTURE AND SUBJECTIVE OPINION'S OF THE PROSECUTION'S
GANG EXPERT WITNESS --- AND BOTH "GARCIA" AND "BRICENO"
HELD, THAT THIS IS WHOAFULLY LACKING AND INSUFFICIENT
--- HERE AGAIN, SOMETHING MORE THAN AN EXPERTS
WITNESSES UNSUBSTANTIATED OPINION THAT A CRIME WAS COMMITTED
FOR BENIFIT OF, --- AT THE DIRECTION OF ---OR IN ASSOCIATION
WITH CRIMINAL STREET GANG IS REQUIRED TO JUSTIFY A TRUE
FINDING ON A GANG ENHANCEMENT

(12)

---- The Gang Experts self serving, subjective speculation and opinions --- did nothing more than improperly inform the Jury How [the expert] believed the case should be decided --- without any underlying factual basis to support it see [Pure! Frank S.] (2006) 141 Cal App 4TH 1192 at 1197: and [People v Killebrew] (2002) 103 Cal App 4TH 644 at 658: both cited with approval in [Briceno] supra at Pg 1082! Also see [People v Ochoa] (2009) 179 Cal App 4TH 650 at 662:

Here in this instant case there is a total absence of any evidence that the Defendant/Petitioner intended to protect gang turf or facilitate Gang operations and no evidence of the "specific intent" that is a mandatory prerequisite for a finding of Guilt on Gang charge

as the court in [Briceno v Scribner] supra 555 F. 3D 1069 at 1082: that the trier of fact may rely on expert testimony about Gang ~~~ culture and habits — such testimony is insufficient to establish that a specific individual possessed a specific intent ("emphasis added")

---- Whatsmore is ~~~ that as indicated earlier on (pg 6) Herein — "... that an expert witness cannot express his Judgement or opinion that the crimes were committed for the benefit of the Gang ~ for this would have amounted to an opinion that the [Defendant], was guilty and would have been improper see "Briceno" supra at Pg 1089, FN. No. 1, citing moses v payne 543 F. 3D 1090 at 1106: and U.S. v Lockett 919 F. 2D 585 at 590

--- and this is exactly and precisely what occurred Here in Petitioner Borja's case see the Respondents pleadings or answer from District Court pg 4 [3 RT at 223-24 ~ and 229-33] where the prosecutions Gang expert Detective Skahill opines that the offense's were committed for the benefit of a criminal street Gang

Skahill testified that in his opinion the present shooting was committed to promote, assist or further Huberly street Gang [3 RT 233-234] also see [2 RT 62] and [3 RT 291,~ 312-313] ~ see also Petitioner's federal Habeas corpus points + authorities (pg 8-11;) ----

(13)

--- and as should be abundantly clear there exists that the magistrates report & recommendations were wrong and erroneously decided --- was on many levels that conflict with provisions of the united states constitution

10. The third arguement of his habeas corpus --- --- petitioner maintains that the assault with deadly weapon's offense's were not proven at trial with sufficient evidence --- and that each and every element of those's crime's were not established with reliable, solid evidence in violation of JACKSON V VIRGINIA supra 443 U.S. 307; and his constitutional rights to fair trial and due process of law were violated --- and that his trial was fundamentally unfair !! --- petitioner asserts that all the legal citations and their arguements set forth in allegation # 5 thru 9 in this herein instant motions --- equally apply to the ADW offense and request that the court consider them as if they were fully set forth in this instant arguement

11. { cummulative errors }

Petitioner claims that --- the cumulative effect of these errors, resulted in a trial that was so infected with unfairness as to make the resulting conviction's a denial of due process { DONNELLY V De CHRISTOFORO } (1974) 416 U.S. 637, 643: in analyzeing prejudice in a case in which it is questionable whether any single trial error examined in isolation is sufficiently prejudicial to warrant reversal --- the court's have recognized the importance of considering the cumulative effect of multiple error's --- was not simply conducting an issue by issue error review see { united states V frederick } (9th cir 1996) 78 F. 3D. 1370, 1381 see also { whelchel V washington } (9th cir 2000) 232 F. 3D. 1197, 1212! --- --- noting that cumulative error applies on habeas corpus review and { matlock V rose } (6th cir 1984) 731 F. 2D. 1236, 1244 --- --- "error's that might not be so prejudicial as to amount to a deprivation of due process when considered alone --- may cumulatively, produce a trial setting that is " fundamentally unfair

(14)

(12.)  IN THE ABUNDANCE OF CAUTION, PETITIONER RESPECTFULLY INVOKES THE PROTECTIONS OF [HAINES V KERNER] (1972) 404 U.S. 519, 520, AND ITS PROGENY --- WHERE COURTS ARE ADVISED AND INSTRUCTED TO LIBERALLY CONSTRUE ANY PRO-SE PLEADINGS, PETITION'S OR DOCUMENTS AND TO NOT REQUIRE OF THEM -- THE SAME STRICT, STRINGENT STANDARDS THAT WOULD BE EXPECTED FROM FORMAL PAPERS DRAFTED BY ~~LEGAL~~ LAWYER'S OR ATTORNEY'S

--- WHEN AN APPLICANT FILES HIS APPLICATION FOR [C.O.A.] IN PRO-SE --- THE COURT OF APPEAL'S CONSTRUE'S HIS PETITION LIBERALLY [HALL V SCOTT] (10TH CIR 2002) 292 F. 3D 1264: ---- AND COURT OF APPEAL'S SHOULD RESOLVE ANY DOUBT ABOUT ENTITLEMENT TO [C.O.A.] IN FAVOR OF GRANTING IT [SONNIER V JOHNSON] (5TH CIR 1998) 161 F. 3D 941:

---- IN KEEPING WITH THIS ---- PETITIONER MAINTAINS THAT HE HAS IN "FACT AND LAW" SATISFIED THE INITIAL THRESHOLD SHOWING THAT HIS CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED --- AND THAT HIS CASE DESERVES THE OPPORTUNITY TO APPEAL THE LOWER DISTRICT COURT'S ERRONEOUS DECISION !!?

WHEREFORE, PETITIONER RESPECTFULLY PRAY'S THAT THE "HONORABLE", JUSTICES OF NINTH CIRCUIT FEDERAL COURT OF APPEAL'S, --- FIND "GOOD CAUSE" AND ISSUE THE "CERTIFICATE OF APPEALABILITY" [C.O.A.]

PURSUANT TO 28 U.S.C §1746 I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT

DATED: __1/23/13__

_Jose Borji_
JOSE ANTHONY BORJA
PETITIONER
IN PRO-SE

(15)

STATE OF CALIFORNIA                                    COUNTY OF KERN

### VERIFICATION

#### C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC. 17460

I _JOSE A BORJA_____ declare under penalty of perjury that: I am the

_PETITIONER APPELLANT_____ in the above entitled action. I have read the foregoing documents and know the contents thereof and the same is true of my own knowledge, except as to matters stated therein upon information, and belief, and as to those matters, I believe they are true.

Executed this _23_ day of _JANUARY_____, 2012³ Kern Valley State Prison.

                              Signature _____
                                        DECLARANT/PRISONER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### PROOF OF SEVICE BY MAIL

#### C.C.P. SEC. 1013(a) & 2015.5; 28 U.S.C. SEC. 1746

I _JOSE ANTHONY BORJA_____, am a resident of California State Prison, in the County of KERN, State of California: I am over the age of eighteen (18) years and am/am not a party of the above entitled action. My state prison address is: P.O. Box _5104___, Delano, CA. 93216.

On _JANUARY 23_____, 2012³ I served the foregoing ① MOTION FOR LEAVE OF COURT TO ACCEPT LATE

C.O.A, ② PETITION FOR ISSUANCE OF CERTIFICATE ~~OR MORE DEPENDENCE~~ OF APPEALIBILITY

WITH EXHIBITS 1 +2, NOTICE OF APPEAL AND DISTRICT COURTS DENIAL OF COA. ~~FOR THE~~

~~TO KEEP OF COURT JUSTICES OF THE 9TH CIRCUIT.~~

                        Set forth exact title of document(s) served

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s) with postage thereof fully paid, in the United States Mail, in a deposit box so provided at KERN VALLEY State Prison, Delano, CA. 93215.  OFFICE OF THE CLERK                    OFFICE OF THE ATTORNEY GENERAL OF
          UNITED STATES COURT OF APPEALS       CALIFORNIA (LA)
            FOR THE NINTH CIRCUIT
            P.O. BOX 193939                     DAVID ELGIN MADEO
          SAN FRANCISCO, CA 94119-3939.         SUITE 1702
                                                300 SOUTH SPRING STREET
                                                LOS ANGELES, CA 90013

                        List parties served
There is delivery service by United States Mail at the place so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _1/23/13_____           _____
                                          DECLARANT/PRISONER

(16)

# "APPENDIX

## THree"

---

THe maGistrates RePoRt ans RecomenDaTioN's From
Central DistRicts couRts DewIal oF PetitoneR
HAbeas coRPus

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JOSE ANTHONY BORJA, | ) | NO. CV 09-2420 DDP (SS) |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION OF** |
| v. | ) | **UNITED STATES MAGISTRATE JUDGE** |
| KELLY HARRINGTON, Warden, | ) | |
| Respondent. | ) | |

This Report and Recommendation is submitted to the Honorable Dean
D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636
and General Order 05-07 of the United States District Court for the
Central District of California.

**I.**

**INTRODUCTION**

On April 8, 2009, Jose Anthony Borja ("Petitioner"), a California
State prisoner proceeding pro se, filed a Petition for Writ of Habeas
Corpus by a Person in State Custody (the "Petition") pursuant to 28

1  U.S.C. § 2254.  Petitioner also filed a memorandum of points and
2  authorities in support of the Petition (the "Pet. Memo").  On July 20,
3  2009, Respondent[1] filed an Answer to the Petition (the "Answer"), as
4  well as a memorandum of points and authorities in support of the Answer
5  (the "Answer Memo").  Respondent lodged numerous documents including a
6  two-volume copy of the Clerk's Transcript ("CT") and a two-volume copy
7  of the Reporter's Transcript ("RT") from Petitioner's trial proceedings
8  in the Los Angeles County Superior Court.  On October 6, 2009,
9  Petitioner filed a Reply to the Answer (the "Reply").  For the reasons
10  discussed below, it is recommended that the Petition be DENIED and that
11  this action be DISMISSED with prejudice.

## II.

### PRIOR PROCEEDINGS

16  On June 29, 2006, a Los Angeles County Superior Court jury
17  convicted Petitioner of attempted murder, five counts of assault with
18  a firearm, and two counts of shooting at an occupied motor vehicle or
19  inhabited dwelling.  (CT 263-71).  The jury also found true numerous
20  sentence-enhancement allegations, including that Petitioner committed
21  his crimes for the benefit of a criminal street gang with the specific
22  intent to promote, further, or assist in any criminal conduct by gang
23  members in violation of California Penal Code section 186.22(b)(1).  (CT
24  264-71).  On August 8, 2006, the trial court, after finding that
25  Petitioner suffered numerous serious or violent prior felony

---

27  [1]  Kelly Harrington, warden of the Kern Valley State Prison in
Delano, California, where Petitioner is incarcerated, is substituted as
28  the proper respondent.  See Fed. R. Civ. P. 25(d); Rules Governing §
2254 Cases R. 2(a).

2

1  convictions, imposed a determinate sentence of fifty-eight years and an

2  indeterminate sentence of 175 years to life in state prison.  (CT 314-

3  25; RT 440, 448-49).

4

5    On September 26, 2007, the California Court of Appeal found that

6  the trial court erroneously calculated Petitioner's sentence and

7  remanded the matter for resentencing, but otherwise affirmed the trial

8  court's judgment.  (Lodgment G, Unpublished Opinion of the California

9  Court of Appeal ("Lodgment G") at 1, 18).  Petitioner subsequently filed

10  a petition for review in the California Supreme Court, which was denied

11  on January 3, 2008, without comment or citation to authority.  (Lodgment

12  I, California Supreme Court Order ("Lodgment I")).

13

14    Pursuant to the California Court of Appeal's remand order, on

15  February 6, 2008, the trial court resentenced Petitioner by imposing a

16  determinate sentence of forty-six years and an indeterminate sentence

17  of 175 years to life in state prison.  (Lodgment J, Petitioner's

18  Abstract of Judgment and the Minute Order of February 6, 2008 ("Lodgment

19  J")).  Petitioner filed the instant Petition on April 8, 2009.

20

21                              **III.**

22                       **FACTUAL BACKGROUND**

23

24    The following facts, taken from the California Court of Appeal's

25  unpublished decision, have not been rebutted with clear and convincing

26  evidence and must, therefore, be presumed correct.  28 U.S.C. §

27  2254(e)(1).

28

                              3

On a Friday evening in early November 2005, Carlos Andrade gathered with some friends for a barbecue in the front yard of a home in East Valinda, an unincorporated area of Los Angeles County. As he stood in front of the house drinking a beer, he saw a black Mustang being driven recklessly up and down the residential street. Andrade yelled at the driver, whom he recognized as a neighborhood "cholo"[FN2] known as "Toro," to slow down because of the many children who live and play on the street. The driver stopped, got out of his car and engaged in a staring contest with Andrade. After a minute or so the driver got back in his car and drove away. Minutes later he returned and again got out of his car, this time brandishing a handgun. The driver pointed the gun at Andrade and fired three or four shots. Andrade turned and ran but was struck in the lower back with a bullet.

[FN2] The responding deputy testified that Andrade, speaking in Spanish, used this term in referring to [Petitioner]. According to the deputy, "cholo" is a slang term for gangster.

Just before the shooting started, Rene Bautista, accompanied by his wife and two children, pulled into his driveway next to the yard where Andrade stood. Bautista's eleven-year-old son left the car to open the locked gate. Bautista then heard a shot coming from Andrade's direction, looked up, saw a muzzle flash and yelled for his family to

4

get down. One of the shots struck the driver's door of the sports utility vehicle where Bautista sat, and another struck the door to the Bautistas' garage.[FN3] As the black Mustang sped away, Bautista recognized the car as one driven by [Petitioner], who lived around the corner and was known to be a member of the local Hurley Street gang. Bautista recognized his car from an encounter with [Petitioner] several months before, when [Petitioner], driving the same black Mustang, intentionally ran over Bautista's dog. Upon questioning by a deputy sheriff who responded to the call, Andrade too identified [Petitioner] by name as the shooter.

> [FN3] Bautista testified he was about 60-70 feet from the black Mustang at the time the shooting started. Detective Steven Skahill, who investigated the crime scene, testified Bautista was approximately 35 feet from "the shooting." A streetlight is located midway between the two homes and was illuminated that night.

Based on the descriptions given by Andrade and Bautista to the responding deputies, [Petitioner] was arrested several days later; and both Andrade and Bautista identified him in a photographic lineup. After first selecting [Petitioner's] picture, however, Bautista also circled the photograph of a man who, like [Petitioner], wore a mustache. Both Andrade and Bautista identified [Petitioner's] black Mustang.

[Petitioner's] first trial ended in a hung jury. Both Andrade and Bautista were subpoenaed to testify at the retrial.[FN4] Despite their earlier statements to the responding deputies, both men now professed uncertainty about the identity of the shooter, claiming they had not actually seen the shooter's face. Under questioning, they insisted they were not afraid to testify, although two deputies testified that each had admitted out of court to being afraid of retaliation from [Petitioner] or other gang members. In light of Andrade and Bautista's recalcitrance, the responding deputies testified to their earlier statements at the scene of the shooting, and a bilingual deputy testified to Andrade's statements identifying [Petitioner] and his car at the lineup.

[FN4] At the photographic lineup Andrade had admitted to one deputy he was afraid [Petitioner] would retaliate against him. When he later failed to appear at the preliminary hearing pursuant to subpoena, he was arrested and incarcerated for 50 days to ensure his appearance at trial. At trial Andrade claimed not to be afraid of testifying and blamed his injury and pain medication for his conflicting statements to the deputies who interviewed him. He also testified he was not aware of any gang activity in his neighborhood.

6

1    Bautista failed to appear to testify at [Petitioner's]
2    first trial but did appear at the retrial after he was
3    advised the court had issued a bench warrant authorizing his
4    arrest.  Although he first claimed his failure to appear was
5    the result of a miscommunication, he later admitted he did
6    not want to testify at trial because of his fears for his
7    family.  Bautista had earlier confided to a deputy that he
8    had seen gang members driving past his house and staring,
9    thus making him afraid of gang retaliation against his
10   family.

12   The People also called Detective Steven Skahill, an
13   experienced gang investigator,[FN5] to testify as an expert on
14   gang culture and practices.  Skahill testified two Hispanic
15   gangs claimed the area of the shooting -- the Hurley Street
16   gang and the East Side Dukes -- and identified several Hurley
17   Street gang members who had been convicted of violent crimes.
18   Skahill also testified [Petitioner] had claimed to be a
19   member of the Hurley Street gang and had numerous gang
20   tattoos, including "Hurley Street" across his chest and "SGV"
21   (San Gabriel Valley) on his arm.  Based on the circumstances
22   of the shooting, Skahill expressed his opinion that the
23   offenses had been committed for the benefit of a criminal
24   street gang.  According to Skahill, after the kind of
25   "stare-down" or "mad dogging" contest that occurred between
26   [Petitioner] and Andrade, the gang member would have to "save
27   face" for himself and the gang to promote the gang and
28   preserve its dominance.  If a gang member had been challenged

7

by a member of the community and did not respond, he would be considered weak; and the gang would lose respect.

[FN5] A 24-year veteran of the Los Angeles County Sheriff's Department, Detective Skahill had been working as a gang investigator for more than 17 years, predominantly out of the station that covers the Hurley Street gang territory.

[Petitioner] did not testify and presented only two exhibits in his defense. He was convicted on all counts, and the jury found true the special allegations supporting the gang and firearm enhancements. In a bifurcated proceeding, the court found true the allegations that [Petitioner] had suffered five prior serious or violent felony convictions within the meaning of the "Three Strikes" law ([Cal. Penal Code §§ 667(h)-(i), 1170.12(a)-(d)]) and one prior serious felony conviction under [California Penal Code] section 667, subdivision (a)(1). [Petitioner] was sentenced to an aggregate state prison term of 58 years to be followed by an indeterminate term of 175 years to life.

(Lodgment G at 2-5).

\\
\\
\\
\\
\\

8

# IV.

## PETITIONER'S CLAIMS

Petitioner raises three grounds for federal habeas relief. First, Petitioner contends that the trial court committed constitutional error by allowing a gang expert to testify regarding Petitioner's guilt. (Petition at 5). Second, Petitioner contends that there was insufficient evidence to support the gang enhancement. (Id.). Third, Petitioner contends that his conviction for committing assault with a handgun against the Bautista family was not supported by sufficient evidence. (Id. at 6).

# V.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which effected amendments to the federal habeas statutes, applies to the instant Petition because Petitioner filed it after AEDPA's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). "By its terms [AEDPA] bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011). Pursuant to 28 U.S.C. section 2254(d)(1) and (d)(2), a federal court may only grant habeas relief if the state court adjudication was contrary to or an unreasonable application of federal law or was based upon an unreasonable determination of the facts.

9

1    AEDPA limits the scope of clearly established federal law to the
2  holdings of the United States Supreme Court as of the time of the state
3  court decision under review.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 123
4  S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  Circuit precedent is relevant
5  under AEDPA when it illuminates whether a state court unreasonably
6  applied a general legal standard announced by the Supreme Court.  <u>See</u>
7  <u>Crater v. Galaza</u>, 491 F.3d 1119, 1126 n.8 (9th Cir. 2007).
8
9    Here, Petitioner raised all of his claims before the California
10 Court of Appeal on direct review.  (Lodgment A, Appellant's Opening
11 Brief ("Lodgment A") at 9-21, 26-31).  Petitioner invoked the federal
12 nature of his claim in Ground One by arguing that the gang expert's
13 testimony "deprived [Petitioner] of due process of law, and his right
14 to a jury trial under the Sixth and Fourteenth Amendment to the United
15 States Constitution."  (<u>Id.</u> at 17).  Petitioner invoked the federal
16 nature of his claim in Ground Two by arguing that "[a] conviction that
17 is not supported by substantial evidence also violates the Fourteenth
18 Amendment to the United States Constitution."  (<u>Id.</u> at 11-12).
19 Petitioner invoked the federal nature of his claim in Ground Three by
20 arguing that "[t]he due process clause of the Fourteenth Amendment
21 requires the reversal of a criminal conviction unless sufficient
22 evidence was adduced at trial to justify a rational trier of fact in
23 finding guilt beyond a reasonable doubt."  (<u>Id.</u> at 27).  The California
24 Court of Appeal denied all of Petitioner's claims in a reasoned opinion.
25 (Lodgment G at 5-10, 13-15).
26
27
28

1    Petitioner next raised all of his claims before the California

2   Supreme Court in his petition for review.[2] The California Supreme Court

3   denied Petitioner's petition for review without comment or citation to

4   authority.   (Lodgment I).   The Ninth Circuit has held that the

5   California Supreme Court's silent denial of a petition for review

6   satisfies the exhaustion requirement. See Williams v. Cavazos, 646 F.3d

7   626, 637 n.5 (9th Cir. 2011). However, the Ninth Circuit explained that

8   the silent denial of a petition for review is "not a decision on the

9   merits" and that federal habeas courts must "look through" the silent

10  denial to the last reasoned state court decision. Id. at 635. The last

11  reasoned state court decision here is the opinion of the California

12  Court of Appeal.

13

14    The California Court of Appeal denied Ground One on the merits, but

15  expressly declined to consider Petitioner's claim under the federal

16  Constitution "because he failed to raise that issue at trial."

17  (Lodgment G at 9 n.10). Thus, the Court concludes that the California

18  Court of Appeal did not "adjudicate on the merits" Petitioner's

19  constitutional claim in Ground One. Accordingly, AEDPA deference does

20  not apply and the Court will apply de novo review to Ground One. See

21  Williams, 646 F.3d at 637.[3]

22

23    [2] Petitioner's petition for review is missing from the state court
     records lodged with the Court.  However, the parties appear to agree
24   that Petitioner raised all of his claims in his petition for review.
     Petitioner identifies the claims raised in his petition for review in
25   the instant Petition.  (See Petition at 3). Respondent specifically
     acknowledges Petitioner's petition for review, (Answer Memo at 2), and
26   states that all of Petitioner's claims are exhausted, (Answer at 1),
27   which necessarily means that he raised them in his petition for review.

28    [3]  The Court may only consider new evidence obtained through an
                                              (continued...)

11

1    Because the court of appeal imposed a procedural default on Ground

2  One, the adequate and independent state ground doctrine could

3  potentially bar federal review of this claim. See, e.g., Walker v.

4  Martin, __ U.S. __, 131 S. Ct. 1120, 1127, 179 L. Ed. 2d 62 (2011)

5  ("[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief

6  will be unavailable when (1) a state court has declined to address a

7  prisoner's federal claims because the prisoner had failed to meet a

8  state procedural requirement, and (2) the state judgment rests on

9  independent and adequate state procedural grounds." (internal quotation

10  marks, citation, and brackets omitted)). However, this Court has the

11  discretion to deny claims on the merits without reaching procedural

12  default issues where the outcome will be the same. See Lambrix v.

13  Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997)

14  (holding that a district court may address the merits without reaching

15  procedural issues where the interests of judicial economy are best

16  served by doing so). The Court exercises its discretion to deny Ground

17  One on the merits, under de novo review.

18

19    The California Court of Appeal denied Grounds Two and Three on the

20  merits and addressed the federal nature of Petitioner's claims by

21  analyzing "whether, on the entire record viewed in the light most

22  favorable to the People, any rational trier of fact could find

23  [Petitioner] guilty beyond a reasonable doubt." (Lodgment G at 6); (see

24

25

26     [3]  (...continued) evidentiary hearing if Petitioner satisfies 28 U.S.C. section

27  2254(e)(2). See Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1401, 179 L. Ed. 2d 557 (2011). The Court finds that there is no need

28  for an evidentiary hearing to resolve this claim.

1  also id. at 15) (concluding that "the jury reasonably could have found
2  that [Petitioner] harbored the necessary intent to assault the members
3  of the Bautista family."). This is the same sufficiency of the evidence
4  standard required by the federal Constitution. See Jackson v. Virginia,
5  443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Thus, the
6  Court concludes that the California Court of Appeal "adjudicated on the
7  merits" Petitioner's claims in Grounds Two and Three. Accordingly, the
8  deferential standard of review contained in section 2254(d)(1) and
9  (d)(2) applies. See Richter, 131 S. Ct. at 784.[4]

10
11                                    VI.
12                                 DISCUSSION
13
14  A.  **Petitioner Is Not Entitled To Habeas Relief On His Claim That An**
15      **Expert Witness Improperly Testified Regarding The Ultimate**
16      **Question Of Petitioner's Guilt**
17
18      In Ground One, Petitioner contends that "[i]t was prejudicial
19  constitutional error for a gang expert to testify as to Petitioner's
20  guilt." (Petition at 5). Specifically, Petitioner argues that the
21  prosecution's gang expert, Detective Steven Skahill ("Detective
22  Skahill"), improperly "testified that Petitioner was guilty of the gang
23  enhancements. This opinion testimony violated Petitioner's Fourteenth

_____

25      [4]  The Supreme Court has held that "[i]f a claim has been
26  adjudicated on the merits by a state court, a federal habeas petition
    must overcome the limitation of § 2254(d)(1) on the record that was
27  before that state court." Pinholster, 131 S. Ct. at 1400. Thus, the
    Court cannot hold an evidentiary hearing on Petitioner's claims in
28  Grounds Two or Three. Id. ("[E]vidence introduced in federal court has
    no bearing on § 2254(d)(1) review.").

                                    13

1  Amendment rights under clearly established high court precedent because
2  it undermined the jury's responsibility to find the ultimate facts
3  beyond a reasonable doubt." (Pet. Memo at 13). This claim fails under
4  de novo review.

6      1.  **Factual Background**

8      On June 28, 2006, the prosecution called Detective Skahill as a
9  witness. (RT 172, 210). Detective Skahill worked for over seventeen
10 years as a gang investigator for the Los Angeles County Sheriff's
11 Department. He was assigned to the sheriff's station near the location
12 of the shooting for approximately twenty years. (RT 209-10). According
13 to the detective, the area surrounding the location of Andrade's
14 shooting was claimed by the two Hispanic gangs:  the Hurley Street gang
15 and the East Side Dukes.  (RT 219-20, 223).  Members of the Hurley
16 Street gang typically have self-identifying tattoos on their bodies.
17 (RT 220).  Petitioner, whom the detective believed identifies with the
18 Hurley Street gang, has such a tattoo on his chest consisting of the
19 word "Hurley" as well as a tattoo bearing the letters "SGV" on his arm,
20 which stands for "San Gabriel Valley" in gang culture. (RT 224, 232).
21 Detective Skahill previously encountered Petitioner in September 2005
22 while investigating an incident in which Petitioner's black Mustang was
23 targeted in a gang-related shooting.  (RT 225-27).  In addition, various
24 field identification reports filed by sheriff's deputies identified
25 Petitioner as a Hurley Street gang member.  (RT 230-33).

27     When asked whether he believed Andrade's shooting was committed for
28 the benefit of a criminal street gang, Detective Skahill opined that

14

1    If he does do something, the respect goes up.   His
2    respect goes up within the gang itself too because he did
3    something about it, he didn't coward down.   That's how it
4    becomes a gang incident.

6  (RT 235).

8    In Detective Skahill's opinion, a gang member would lose respect
9  in the gang if he failed to retaliate against an individual who yelled
10 at him for driving erratically.  (RT 235-36).  The detective testified
11 that fear and intimidation play prominent roles in establishing a gang's
12 dominance within a community.  (RT 237-39).  In particular, fear of
13 gangs often dissuades neighborhood residents from testifying against
14 gang members.  (RT 238-39).

16    **2.  Analysis**

18    Under California law, expert testimony on criminal street gangs is
19 admissible to prove the elements of the criminal street gang
20 enhancement.  See People v. Hernandez, 33 Cal. 4th 1040, 1047-48, 16
21 Cal. Rptr. 3d 880 (2004) ("In order to prove the elements of the
22 criminal street gang enhancement, the prosecution may, as in this case,
23 present expert testimony on criminal street gangs.").  Additionally, "an
24 expert may render opinion testimony on the basis of facts given in a
25 hypothetical question that asks the expert to assume their truth."
26 People v. Gardeley, 14 Cal. 4th 605, 618, 59 Cal. Rptr. 2d 356 (1996)
27 (internal quotation marks omitted).

28

16

1    At the outset, it must be recognized that federal habeas courts "do
2  not review questions of state evidence law." Jammal v. Van de Kamp, 926
3  F.2d 918, 919 (9th Cir. 1991); see also Lewis v. Jeffers, 497 U.S. 764,
4  780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990). "[F]ailure to comply
5  with the state's rules of evidence is neither a necessary nor a
6  sufficient basis for granting habeas relief. While adherence to state
7  evidentiary rules suggests that the trial was conducted in a
8  procedurally fair manner, it is certainly possible to have a fair trial
9  even when state standards are violated." Jammal, 926 F.2d at 919.
10  Thus, the erroneous admission of gang expert testimony is not subject
11  to federal habeas review unless a specific constitutional guarantee is
12  violated or the error is of such magnitude that the result is a denial
13  of due process and the fundamental right to a fair trial. See Henry v.
14  Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). The admission of evidence
15  violates due process only where two circumstances are met: (1) "there
16  are no permissible inferences the jury may draw from the evidence"; and
17  (2) the evidence is "of such quality as necessarily prevents a fair
18  trial." Jammal, 926 F.2d at 920 (internal quotation marks omitted)
19  (emphasis in original).
20
21    Here, Detective Skahill's discussion of gang culture did not result
22  in a deprivation of Petitioner's right to due process or a fair trial.
23  Testimony from Detective Skahill, an experienced gang investigator, was
24  relevant to explain how a retaliatory act against an individual who
25  chose to confront a gang member within gang territory could benefit a
26  gang by furthering its reputation for ruthlessness. See United States
27  v. Hankey, 203 F.3d 1160, 1168-69 (9th Cir. 2000) (finding that a gang
28  expert's testimony was relevant based on his experience as a police

17

1 officer dealing with gangs and special knowledge of gang culture). The
2 detective's opinion that Petitioner's act of shooting Andrade was "a
3 gang-related incident" provided the jury with a context of how street
4 gangs operate within a community and how gangs rely on fear and
5 intimidation to reinforce their dominance in a neighborhood. (RT 233-
6 37).
7
8     Utilizing Detective Skahill's testimony, the jury could draw a
9 rational inference that Petitioner's decision to shoot Andrade was
10 motivated not just by an unwarranted display of anger, but by
11 Petitioner's desire to aid the Hurley Street gang and cement its
12 reputation for ruthlessness. See Windham v. Merkle, 163 F.3d 1092,
13 1103-04 (9th Cir. 1998) (finding no error in the admission of gang
14 expert testimony where such evidence could establish a reasonable
15 inference that the petitioner's crimes were motivated by an intent to
16 retaliate against a rival gang). Without the detective's testimony, the
17 jury would have had no means to fully assess Petitioner's motivation for
18 shooting Andrade and what Petitioner intended to accomplish by his
19 actions. See People v. Olquin, 31 Cal. App. 4th 1355, 1369, 37 Cal.
20 Rptr. 2d 596 (1994) ("Evidence of gang activity and affiliation is
21 admissible where it is relevant to issues of motive and
22 intent . . . ."); People v. Funes, 23 Cal. App. 4th 1506, 1518, 28 Cal.
23 Rptr. 2d 758 (1994) ("Cases have repeatedly held that it is proper to
24 introduce evidence of gang affiliation and activity where such evidence
25 is relevant to an issue of motive or intent."). Because the jury could
26 draw some permissive inferences from Detective Skahill's testimony, its
27 admission did not render the trial proceedings fundamentally unfair.
28

18

1    As for Petitioner's claim that Detective Skahill improperly
2  testified to the ultimate question of Petitioner's guilt, the record
3  does not reflect the detective expressing such an opinion. "Although
4  '[a] witness is not permitted to give a direct opinion about the
5  defendant's guilt or innocence . . . . an expert may otherwise testify
6  regarding even an ultimate issue to be resolved by the trier of fact.'"
7  Moses v. Payne, 543 F.3d 1090, 1106 (9th Cir. 2008) (as amended). Here,
8  Detective Skahill never directly stated that Petitioner was guilty of
9  any specific crime or that the jury should find true the gang
10 enhancement allegation, nor did the detective discuss his view of
11 Petitioner's intent or mental state. Rather, the detective opined that
12 based on his knowledge of gang culture and Petitioner's association with
13 the Hurley Street gang, Petitioner's retaliatory act against Andrade was
14 "gang-related." This testimony was proper. (RT 233-34).
15
16    Because the gang enhancement statute does not expressly require a
17 jury finding that Petitioner's crime was "gang-related," see Cal. Penal
18 Code § 186.22(b)(1) (requiring a finding that a crime was committed for
19 the benefit of any gang with the specific intent to promote, further,
20 or assist in any criminal conduct by gang members), Detective Skahill's
21 opinion did not convey to the jury how it should decide the elements of
22 the gang enhancement statute. To the extent Detective Skahill's
23 testimony touched upon an ultimate issue, his opinion "is not
24 objectionable [simply] because it embraces the ultimate issue to be
25 decided by the trier of fact." Cal. Evid. Code § 805; see Fed. R. Evid.
26 704 (utilizing identical standard); see also Moses, 543 F.3d at 1105
27 (the admission of expert testimony concerning an ultimate issue to be
28 resolved by the trial of fact does not violate the Constitution); U.S.

1  v. Lockett, 919 F.2d 585, 590-1 (9th Cir. 1990) (an expert may testify

2  regarding an ultimate issue, without giving a direct opinion on guilt

3  or innocence).  Accordingly, Ground One fails under de novo review.

4

5  B.  **Petitioner Is Not Entitled To Habeas Relief On His Claims**

6      **Regarding Insufficient Evidence**

7

8      In Grounds Two and Three, Petitioner challenges the sufficiency of

9  the evidence to support his convictions.  Specifically, in Ground Two,

10 Petitioner contends that there was insufficient evidence to support the

11 jury's finding that his conduct was "intended to promote, further or

12 assist the Hurley Street gang when he shot Carlos Andrade besides the

13 conclusory and speculative assertions of Detective Skahill." (Pet. Memo

14 at 18).    In Ground Three, Petitioner contends that there was

15 insufficient evidence to support his four convictions for assaulting

16 each member of the Bautista family with a firearm.  (Petition at 6).

17 There is no merit to these claims.

18

19     A conviction based on insufficient evidence deprives a petitioner

20 of the right to due process under the Fourteenth Amendment.  Jackson,

21 443 U.S. at 317-18.  On habeas review, sufficiency of the evidence

22 claims must be assessed "'with explicit reference to the substantive

23 elements of the criminal offense as defined by state law.'"  Chein v.

24 Shumsky, 373 F.3d 978, 983 (9th Cir. 2004).  To determine whether the

25 evidence is sufficient to uphold a criminal conviction, "the relevant

26 question is whether, after viewing the evidence in the light most

27 favorable to the prosecution, any rational trier of fact could have

28 found the essential elements of the crime beyond a reasonable doubt."

20

1  Jackson, 443 U.S. at 319 (emphasis in original).  "If confronted by a
2  record that supports conflicting inferences, federal habeas courts must
3  presume -- even if it does not affirmatively appear in the record --
4  that the trier of fact resolved any such conflicts in favor of the
5  prosecution, and must defer to that resolution.  A jury's credibility
6  determinations are therefore entitled to near-total deference under
7  Jackson."  Bruce, 376 F.3d at 957 (internal quotation marks and citation
8  omitted).
9
10     Accordingly, "the applicant is entitled to habeas corpus relief
11  [only] if it is found that upon the record evidence adduced at trial no
12  rational trier of fact could have found proof of guilt beyond a
13  reasonable doubt."  Jackson, 443 U.S. at 324.  Because this case falls
14  under AEDPA, the standard is even more deferential.  Under AEDPA, the
15  court must determine "whether the decision of the California Court of
16  Appeal reflected an 'unreasonable application of' Jackson and Winship
17  [In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1070, 25 L. Ed. 2d
18  368 (1970)] to the facts of this case."  Juan H. v. Allen, 408 F.3d
19  1262, 1274-75 (9th Cir. 2005) (as amended).
20
21     1.   Ground Two: Gang Enhancement
22
23     The California Street Terrorism Enforcement and Prevention Act
24  ("STEP Act"), California Penal Code sections 186.20 et seq., is a
25  statutory scheme enacted to further the "eradication of criminal
26  activity by street gangs."  Cal. Penal Code § 186.21.  Pursuant to this
27  goal, the STEP Act contains a sentence enhancement in section
28  186.22(b)(1) if a person is convicted of certain gang-related crimes.

21

1  As explained by the Ninth Circuit, "Section 186.22(b)(1)'s gang
2  enhancement may only be applied if the prosecution proves the following
3  two elements beyond a reasonable doubt: (1) that [the petitioner]
4  committed a felony 'for the benefit of, at the direction of, or in
5  association with any criminal street gang,' and (2) that he did so 'with
6  the specific intent to promote, further, or assist in any criminal
7  conduct by gang members.'" Emery v. Clark, 643 F.3d 1210, 1214 (9th
8  Cir. 2011) (per curiam). "[T]o prove the elements of the criminal
9  street gang enhancement, the prosecution may . . . present expert
10 testimony on criminal street gangs." People v. Hernandez, 33 Cal. 4th
11 1040, 1047-48, 16 Cal. Rptr. 3d 880 (2004).
12
13     Although the prosecution need not prove that the petitioner
14 possessed a specific intent to "benefit" the gang, "[w]hat is required
15 is the specific intent to promote, further, or assist in any criminal
16 conduct by gang members." People v. Leon, 161 Cal. App. 4th 149, 163,
17 73 Cal. Rptr. 3d 786 (2008) (internal quotation marks omitted). To
18 sustain a jury's gang enhancement finding, "there must have been
19 evidence upon which a rational trier of fact could find that [the
20 petitioner] acted with the 'specific intent to promote, further, or
21 assist in' some type of 'criminal conduct by gang members,' which may
22 include the crimes of conviction." Emery, 643 F.3d at 1216 (emphasis
23 in original). According to the California Supreme Court, "the scienter
24 requirement in section 186.22(b)(1)--i.e., 'the specific intent to
25 promote, further, or assist in any criminal conduct by gang members'--is
26 unambiguous and applies to any criminal conduct, without a further
27 requirement that the conduct be 'apart from' the criminal conduct
28 underlying the offense of conviction sought to be enhanced." People v.

22

1  Albillar, 51 Cal. 4th 47, 66, 119 Cal. Rptr. 3d 415 (2010) (emphasis in

2  original).   Thus, "'[t]here is no statutory requirement that this

3  "criminal conduct by gang members" be distinct from the charged offense,

4  or that the evidence establish specific crimes the defendant intended

5  to assist his fellow gang members in committing.'"  Id. (quoting People

6  v. Vazquez, 178 Cal. App. 4th 347, 354, 100 Cal. Rptr. 3d 351 (2009)).[5]

7

8        On direct review, the California Court of Appeal concluded there

9  was sufficient evidence to sustain the jury's gang enhancement finding.

10  (Lodgment G at 6-8).   The appellate court acknowledged that it was

11  possible Petitioner's conduct "was intended to enhance his own personal

12  stature within the community . . . and not for the benefit of the Hurley

13  Street gang," but concluded the jury's finding to the contrary was not

14  unreasonable.   (Id. at 7).   In the court's view, the jury could

15  reasonably have found that Petitioner committed the crimes with the

16  specific intent to promote, further, or assist criminal conduct by the

17  Hurley Street gang based on evidence of Petitioner's association with

18  the gang, Petitioner's use of a "mad-dogging" stance directed at

19  Andrade, the fact that the shooting occurred in gang territory, and

20  Detective Skahill's opinion that "the crimes at issue were consistent

21

22

23        [5]  The Ninth Circuit previously held in Garcia v. Carey, 395 F.3d

24  1099 (9th Cir. 2005), and Briceno v. Scribner, 555 F.3d 1069 (9th Cir.

    2009), that "section 186.22's gang enhancement can only be applied when

25  the defendant had the specific intent to facilitate gang members'

    criminal activities other than the charged crime."  Emery, 643 F.3d at

26  1215 (emphasis in original).   This interpretation, however, was

    explicitly disapproved by the California Supreme Court in Albillar, 51

27  Cal. 4th at 64-66, and is no longer binding in this Circuit.  Emery, 643

28  F.3d at 1215 (recognizing "that the California Supreme Court has

    overruled Briceno and Garcia's interpretation of section 186.22(b)(1)").

23

1   with a typical gang's demand for respect on its turf and goal of

2   intimidating community members." (Id. at 7-8).

3

4       This Court agrees with the court of appeal's determination that

5   there is sufficient evidence to support the jury's gang enhancement.

6   First, there is ample evidence that Petitioner committed his crimes "for

7   the benefit of" the Hurley Street gang, specifically to preserve the

8   gang's respect in the community and to exert the gang's dominance

9   through fear and intimidation. Cal. Penal Code § 186.22(b)(1). Andrade

10  and Bautista identified Petitioner as a known Hurley Street gang member,

11  and he had tattoos indicating his association with the gang. (RT 177,

12  185, 218, 224, 234). Andrade, who lived in an area claimed by the

13  Hurley Street gang, told Petitioner to slow down his vehicle, but

14  Petitioner responded by staring at Andrade in an intimidating manner,

15  leaving the scene, and returning moments later with a gun. (RT 116-17,

16  219-20, 223). Petitioner then opened fire on Andrade, hitting him in

17  the back and nearly striking the Bautista family. (RT 116-17, 138-40,

18  217).

19

20      According to Detective Skahill, gang members typically participate

21  in retaliatory acts against community members who affront them in order

22  to reinforce their respective street gang's reputation for ruthlessness

23  and to preserve the gang's respect. (RT 233-36). Viewed in this

24  context, Petitioner's act of shooting Andrade could reasonably be

25  interpreted as an attempt to intimidate residents and to elevate the

26  Hurley Street gang's status in the neighborhood, thereby conferring a

27  benefit on the gang. See Albillar, 51 Cal. 4th at 63 ("Expert opinion

28  that particular criminal conduct benefitted a gang by enhancing its

24

1  reputation for viciousness can be sufficient to raise the inference that
2  the conduct was 'committed for the benefit of . . . a[] criminal street
3  gang' within the meaning of section 186.22(b)(1)."). While the jury
4  could have rejected Detective Skahill's interpretation of Petitioner's
5  conduct, it evidently found the detective's opinion believable. Because
6  the record supports such a finding, the Court must accord deference to
7  the jury's findings. Bruce, 376 F.3d at 957.

9  Second, there is also ample evidence that Petitioner committed his
10 crimes with the specific intent to "promote, further, or assist in any
11 criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1). A
12 reasonable jury could infer that Petitioner's retaliation against
13 Andrade in front of neighborhood residents within the boundaries of
14 Hurley Street gang territory was intended to promote, further, or assist
15 the gang's criminal activities by intimidating neighborhood residents,
16 dissuading them from reporting gang crimes to the police, and
17 solidifying the gang's territorial control. See Vazquez, 178 Cal. App.
18 4th at 353-54 (finding that a murder perceived as an act of intimidation
19 could facilitate a gang's commission of future crimes).

21 In challenging the sufficiency of the evidence, Petitioner relies
22 on Garcia v. Carey, 395 F.3d 1099 (9th Cir. 2005), in arguing there was
23 insufficient evidence of scienter, asserting that Detective Skahill's
24 expert testimony was "purely speculative" as to the question of
25 Petitioner's intent. (Pet. Memo at 19-20). However, the Ninth Circuit
26 has recognized that Garcia's interpretation of the scienter requirement
27 in California Penal Code section 186.22(b)(1) was incorrect. Emery, 643
28 F.3d at 1215. Thus, Petitioner's reliance on Garcia is misplaced.

25

1      Petitioner references the California Court of Appeal's observation
2  that it was "quite plausible [his] conduct was intended to enhance his
3  own personal stature within the community" as an indication that the
4  jury's gang enhancement finding was unreasonable.  (Pet. Memo at 20).
5  This Court disagrees.  Although it is "quite plausible" Petitioner shot
6  Andrade for the sole purpose of enhancing his own personal stature, it
7  is equally plausible he committed such a crime for the benefit of the
8  Hurley Street gang.  Consistent with the Jackson standard of reviewing
9  sufficiency of the evidence claims, the Court entertains the presumption
10  "that the trier of fact resolved any such conflicts in favor of the
11  prosecution, and must defer to that resolution."  Bruce, 376 F.3d at
12  957.

14      Petitioner also challenges the gang enhancement finding based on
15  his assertion that he was not an "active" member of the Hurley Street
16  gang.  (Pet. Memo at 20-21).  Regardless of Petitioner's actual status
17  within the Hurley Street gang, "[t]he enhancement set forth in section
18  186.22(b)(1) . . . does not depend on membership in a gang at all.
19  Rather, it applies when a defendant has personally committed a gang-
20  related felony with the specific intent to aid members of that gang."
21  Albillar, 51 Cal. 4th at 67-68.  Even assuming arguendo that Petitioner
22  was no longer an "active" Hurley Street gang member, that fact alone
23  would not negate a section 186.22(b)(1) gang enhancement.

25      Finally, Petitioner argues that his act of staring at Andrade in
26  an intimidating way (i.e., "mad dogging") was not indicative of "a
27  typical gang's demand for respect."  (Pet. Memo at 21).  Contrary to
28  Petitioner's argument, the California Court of Appeal did not reference

1   Petitioner's "mad dogging" as evidence that Petitioner demanded respect
2   for his gang. Rather, the appellate court noted his intimidating stare,
3   coupled with his other actions, could reasonably be perceived as an
4   attempt to frighten Andrade and to intimidate the neighborhood.
5   (Lodgment G at 7). Thus, Petitioner's act of staring at Andrade was not
6   the sole basis for the jury's finding that he possessed the requisite
7   intent under California Penal Code section 186.22(b)(1).

8

9      In sum, the Court concludes that there is sufficient evidence to
10  support the jury's gang enhancement finding. Habeas relief on
11  Petitioner's claim in Ground Two is unwarranted. See 28 U.S.C. §
12  2254(d).

13

14     **2. Ground Three: Assault With A Firearm**

15

16     "Any person who commits an assault upon the person of another with
17  a firearm shall be punished by imprisonment in the state prison . . .
18  ." Cal. Penal Code § 245(a)(2). An assault, in turn, is defined as "an
19  unlawful attempt, coupled with a present ability, to commit a violent
20  injury on the person of another." Id. § 240. Assault, being a general
21  intent crime, "does not require a specific intent to cause injury or a
22  subjective awareness of the risk that an injury might occur. Rather,
23  assault only requires an intentional act and actual knowledge of those
24  facts sufficient to establish that the act by its nature will probably
25  and directly result in the application of physical force against
26  another." People v. Williams, 26 Cal. 4th 779, 790, 111 Cal. Rptr. 2d
27  114 (2001). "[A] defendant guilty of assault must be aware of the facts
28  that would lead a reasonable person to realize that a battery would

1 directly, naturally and probably result from his conduct. He may not
2 be convicted based on facts he did not know but should have known. He,
3 however, need not be subjectively aware of the risk that a battery might
4 occur." Id. at 788.

6    Thus, in order to sustain a conviction for assault with a firearm,
7 the record must show that "the defendant had actual knowledge his act,
8 by its nature, would probably and directly result in physical force
9 being applied on another person." People v. Riva, 112 Cal. App. 4th
10 981, 997, 5 Cal. Rptr. 3d 649 (2003). "Because the gravamen of assault
11 is the likelihood that the defendant's action will result in a violent
12 injury to another, it follows that a victim of assault is one for whom
13 such an injury was likely." People v. Trujillo, 181 Cal. App. 4th 1344,
14 1355, 105 Cal. Rptr. 3d 316 (2010) (citation omitted).

16    On direct review, the California Court of Appeal concluded there
17 was sufficient evidence to support Petitioner's assault convictions.
18 The court, after stating the applicable law regarding an assailant's
19 knowledge, held,

21    A reasonable person would have realized if he fired at a
22    person standing with friends in front of a home in a
23    residential neighborhood early on a Friday evening, the
24    bullet could strike other pedestrians or residents, whether
25    or not those individuals were intended targets. The jury was
26    presented with evidence the Bautistas' car had just driven
27    into the driveway adjacent to the yard where Andrade stood
28    when [Petitioner] fired, and there was no evidence

28

1    [Petitioner] did not see the car or its individual occupants.

2    Accordingly, the jury reasonably could have found that

3    [Petitioner] harbored the necessary intent to assault the

4    members of the Bautista family.

5

6    (Lodgment G at 15). As discussed below, the California Court of

7    Appeal's rejection of Petitioner's challenge to the sufficiency of the

8    evidence was not contrary to, or an unreasonable application of, clearly

9    established federal law, nor did it constitute an unreasonable

10   determination of the facts in light of the evidence presented.

11

12   In the present case, this Court concludes that, pursuant to

13   Jackson, 443 U.S. at 319, the evidence was sufficient to support

14   Petitioner's convictions for assaulting the Bautista family with a

15   firearm. On the night of the incident, Petitioner pointed a gun at

16   Andrade after Andrade yelled at him to slow down his vehicle. (RT 116-

17   17). At that moment, Bautista, Andrade's neighbor, had just arrived

18   home with his wife and two children and was stopped in his car in front

19   of his driveway. (RT 135-37). Bautista noticed Andrade standing on the

20   open sidewalk next door and greeted him, but Andrade did not respond.

21   (RT 136, 180). When Bautista's son exited the car to open the driveway

22   gate, Bautista heard a series of gunshots and saw muzzle flashes from

23   a gun. (RT 137-38). Bautista alerted his son, daughter, and wife to

24   get down, and his car and house were struck by bullets. (RT 137-38,

25   182). Although neither Bautista nor his family were injured, Andrade

26   was hit by a bullet. (RT 138, 140). From these facts, a rational juror

27   could find beyond a reasonable doubt that Petitioner (1) had the present

28   ability to commit a violent injury on Bautista and his family, (2)

29

1  attempted to do so with a firearm, and (3) had actual knowledge that his
2  act of firing a gun would probably and directly result in injuring
3  anyone caught within range of his gunshots. See Trujillo, 181 Cal. App.
4  4th at 1351, 1357 (upholding multiple assault convictions based on the
5  defendant's act of firing a firearm at a car despite his unawareness of
6  a passenger in the back seat); People v. Felix, 172 Cal. App. 4th 1618,
7  1628-30, 92 Cal. Rptr. 3d 239 (2009) (upholding multiple assault
8  convictions based on the defendant's actual knowledge that his act of
9  firing at a house could endanger the people inside). Because the record
10 supports a finding that Petitioner knew his intentional act of firing
11 a gun would (and did, in Andrade's case) result in injury, sufficient
12 evidence demonstrates Petitioner's intent to commit an assault on the
13 Bautista family.
14
15     Petitioner, however, claims the prosecution was required "to prove
16 that Petitioner was aware of the presence of the Bautistas," and he
17 argues the California Court of Appeal improperly required him to
18 disprove his awareness of the assault victims' presence. (Pet. Memo at
19 23). As illustrated above, the prosecution merely needed to prove that
20 Petitioner had actual knowledge his actions would probably result in
21 injury. Evidence of Petitioner's subjective awareness of the Bautista
22 family was unnecessary to sustain his assault convictions. Trujillo,
23 181 Cal. App. 4th at 1357 (holding that whether a defendant who shot at
24 a car was subjectively aware of unseen passengers was irrelevant).
25 Moreover, the Court notes that evidence of Petitioner's awareness of the
26 presence of the Bautistas or other people in the immediate range of his
27 gunfire could be inferred circumstantially based on the close distance
28 between Bautista's car and Andrade, the fact that Bautista's son was

30

1  outside the car trying to open the driveway gate, and Bautista's ability
2  to observe muzzle flashes from Petitioner's gun.  See People v. Bloom,
3  48 Cal. 3d 1194, 1208, 259 Cal. Rptr. 669 (1989) ("Evidence of a
4  defendant's state of mind is almost inevitably circumstantial, but
5  circumstantial evidence is as sufficient as direct evidence to support
6  a conviction.").    Furthermore, the California Court of Appeal's
7  observation that "there was no evidence [Petitioner] did not see the car
8  or its individual occupants" did not imply Petitioner bore the burden
9  of proving his knowledge of the Bautistas or lack thereof.  (Lodgment
10  G at 15).   Rather, the court, within the context of its assessment of
11  the sufficiency of the evidence, simply noted a deficiency in the
12  record, i.e., the absence of evidence supporting Petitioner's claim that
13  he was unaware of the Bautista family's presence.

14
15      In sum, the Court concludes that there is sufficient evidence to
16  support Petitioner's conviction for assault with a firearm.    Habeas
17  relief on Petitioner's claim in Ground Three is unwarranted.  See 28
18  U.S.C. § 2254(d).

19
20                              **VII.**
21                         **RECOMMENDATION**
22
23      For the foregoing reasons, IT IS RECOMMENDED that the District
     Court issue an Order: (1) accepting and adopting this Amended Report and
24  Recommendation; and (2) directing that Judgment be entered dismissing
25  this action with prejudice.
26
27
    DATED: September 1, 2011              _____/S/_____
28                                        SUZANNE H. SEGAL
                                          UNITED STATES MAGISTRATE JUDGE

                                31

1
2                                    **NOTICE**
3
4        Reports and Recommendations are not appealable to the Court of
5   Appeals, but may be subject to the right of any party to file objections
6   as provided in the Local Rules Governing the Duties of Magistrate Judges
7   and review by the District Judge whose initials appear in the docket
8   number.  No notice of appeal pursuant to the Federal Rules of Appellate
9   Procedure should be filed until entry of the judgment of the District
10  Court.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO: The Clerk of the Court
And the Honorable Justices
of the Ninth Circuit, U.S.
Court of Appeals
San Francisco, Calif

RE: No. 12-56187

Enclosed Petition for
Rehearing (En-Banc)

**RECEIVED**
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AUG 05 2013

FILED
DOCKETED _____
DATE _____ INIT___

To Whom It May Concern,

Believe me, I do realize that you folks are very busy people and that your time is valueable --- and that you are most likely over-worked and under-paid !! --- But if I may beg for your indulgence here for one minute ?!! And ask that the court Clerk's and the "Justices" themselves acknowlege that petitioner is not an "attorney" and to not require of him the same formal, strict, stringent standards and procedure's that would be expected from an Lawyer --- and to Liberally construe his legal pleadings (see case of Haines V Kerner (1972) 404 U.S. 519 at 520 -- and court's are advised to do so, Despite failure to cite proper legal authority---- confusion of legal theories --- poor syntax, and sentence construction ----- or litigants un-familiarity with pleading requirements U.S. V Seesing (9th Cir 2000) 234 F 3d. 456; Bogg V McDougal (1982) 454 U.S. 364; and McCormick V city of Chicago (7th Cir 2000) 230 F. 3d. 319;

The panel Decision Denying petitioner's Request for C.O.A. was Dated: 6-19-2013, petitioner submitted a timely motion for extention of time to file for his "Rehearing" until Aug 1st 2013 --- thus the enclosed petition for "Rehearing" (En-Banc) should be recieved as timely --------

--- Furthermore prison officials and law librarian at this prison have "flat out" Refused to make the required ---

(1)

--- AND NECESSARY AMOUNT OF COPIES FOR THE FULL (EN-BANC) CONSIDERATION AND VOTE, AND WOULD ASK IF THE FEDERAL COURT AND/OR CLERKS THEREOF (ASSIST) TO BRIDGE THIS SHORTCOMMING --- FOR THE PRISON OFFICIAL'S OPPRESSIVE CONDUCT & ACTIONS ARE OUT OF PETITIONER'S CONTROL OR INFLUENCE!! I HAD TO FIGHT WITH THEM TO EVEN GET THE MINIMAL AMOUNT OF COPIES TO FILE AND TO SERVE THE PARTIES ---- SO COULD YOU PLEASE! MAKE THE COPIES AND/OR ELECTRONICALLY TRANSMITT THIS PETITION TO ALL JUSTICES OF THE FULL COURT ??!! ,--- "I'D BE MOST GRATEFUL AND GREATLY APPRECIATE IT!! "THANK YOU,"

Finally, I DO NOT HAVE ACCESS TO A TYPE WRITER --- SO I HAD TO HANDWRITE THE ENCLOSED PETITION, -- AND AS SUCH I WENT A LITTLE OVER THE 15 PAGE LIMIT!? --- IF IT HAD BEEN TYPED, IT WOULD NOT OF EVEN BEEN 15 PG'S -- SO PLEASE!! EXCUSE THIS ASWELL

THANKING YOU IN ADVANCE FOR YOUR CONSIDERATION, -- TIME AND ATTENTION !!!!

SINCERELY
&
RESPECTFULLY

DATED: 7/24/13

X _____
JOSE ANTHONY BORJA
PETITIONER IN PRO-SE

(2)